# AYER AND LORD TIE COMPANY *v.* COMMONWEALTH OF KENTUCKY.

ERROR TO THE COURT OF APPEALS FOR THE STATE OF KENTUCKY.

No. 268. Argued April 27, 1906.—Decided May 21, 1906.

The general rule as to vessels plying between the ports of different States and engaged in the coastwise trade, is that the domicil of the owner is the situs of the vessel for the purposes of taxation wholly irrespective of the place of enrollment, subject to the exception that where a vessel engaged in interstate commerce has acquired an actual situs in a State other than that which is the domicil of the owner it may there be taxed because within the jurisdiction of the taxing authorities.

Vessels owned by a corporation domiciled in Illinois, and which although enrolled in a Kentucky port are not engaged in commerce wholly in the State but are engaged in interstate commerce, and which have acquired a permanent situs for taxation, and are taxed, in another State are not subject to taxation by the State of Kentucky, nor is their situs for taxation therein on account of their being enrolled at a port of that State.

THE Commonwealth of Kentucky, by Frank A. Lucas, revenue agent, commenced an action in the County Court of McCracken County to recover from the Ayer and Lord Tie Company alleged omitted state, county and municipal taxes for the years 1899, 1900 and 1901, claimed to be assessable upon two·steamboats and certain barges, and for the year 1901 upon one other steamboat, all the property of the company.

In the statement of the plaintiff the right to recover in re-spect of the steamboats was·based solely·upon the assertion that on the dates when it was alleged the boats became sub-ject to the taxes in question they were "enrolled, in accord-ance with the laws of the United States governing navigation, at the port of Paducah, in the county of McCracken and State of Kentucky; that, as required by the said laws of the United

States governing navigation, the words of 'Paducah, Kentucky' were painted on the stern of said steamboats; that said boats, when not in use, are kept at Paducah, Kentucky, and that the said port of Paducah is, and was on each of said days, the home port of said steamboats."

The right to recover in respect of the barges was based upon the allegation that "each and all of said boats are now and were on each of the above days mentioned used by the defendant for the purpose of towing ties, loaded on barges; that the defendant was, on each of the days aforesaid, the owner, seized of and in possession of certain barges, used in connection with said steamboats, for the purpose of transporting railroad ties."

The tie company answered as follows: That it was an Illinois corporation, chartered in 1893, and empowered "to transact business with steamboats engaged in interstate commerce;" that "ever since its corporation it has been engaged in business as owner of towboats, plying on the Mississippi, Ohio, Tennessee and Cumberland rivers, and their tributaries; that the business in which towboats had been engaged is that of interstate commerce and of transporting railroad ties in its own barges from different points of said rivers to the port of Brookport, in the State of Illinois; that their said towboats, in pursuit of their business, occasionally touch at the point of Paducah, Kentucky, but never to discharge their cargo, but simply for the purpose of buying stores, employing seamen, and for other like purposes; that they and said barges are in the State of Kentucky but temporarily, and most of their business is transportations from ports and places in Alabama, Mississippi, Kentucky, Missouri, Arkansas, Illinois and Tennessee to said port of Brookport, in the State of Illinois; St. Louis, in the State of Missouri; Duvals Bluff, in the State of Arkansas, at which ports said towboats discharge and deliver their respective cargo of ties, and said boats and barges, owned and controlled by Ayer and Lord Tie Company was engaged in the business aforesaid during and prior to years

1899, 1900 and 1901, and since owned by the said defendant company, have never been engaged in any other business but as aforesaid, nor has said company since its incorporation been engaged in any other business than as aforesaid; that their said vessels were and are regularly licensed and enrolled by the United States under and in pursuance to the acts of Congress."

It was further averred that although the tie company had offices in various cities of Illinois situated on the Ohio river, as also offices in the cities of Paducah and Fulton in the State of Kentucky, and Duvals Bluff in the State of Arkansas, it had such offices in Kentucky for convenience, and its principal office was averred to be in the State of Illinois, of which State it was a citizen.

It was denied that the home port of its vessels was in the port of Paducah, Kentucky, and it was averred that such vessels were enrolled in Kentucky for convenience, and that when they were so enrolled the general manager of its transportation department and of the steamboats of the tie company was a resident of the State of Kentucky.

It was further specifically averred that during the year for which the State of Kentucky was seeking to assess the property in question for taxation "all of said property was assessed (listed?) by the defendant in the State of Illinois for taxation, and has been taxed, and defendant has paid taxes under the State of Illinois, to said State and city of Chicago on all of said property, and denies the right of the State of Kentucky to subject same property to taxation."

Claiming the right under the commerce clause of the Constitution of the United States to trade at the ports of the different States without molestation by the State of Kentucky, the company averred that the imposition and the collection of taxes in question would operate an unlawful interference with the right of the company to trade or engage in interstate commerce as it had heretofore been accustomed to do.

A demurrer was filed to the answer on the ground that it

did not state facts sufficient to constitute a defense. The County Court overruled the demurrer, and plaintiff declining to plead further, the court dismissed "the plaintiff's statement and action." The case was then taken by appeal to the Circuit Court of McCracken County. As part of the record from the County Court the defendant filed in the Circuit Court a petition and bond for removal of the cause to a Federal court, upon the ground of diversity of citizenship. On the trial of the case, before action taken on a demurrer which had been refiled to the answer, the court overruled and dismissed the petition for removal, and the defendant excepted. The demurrer to the answer was overruled, and, the plaintiff declining to plead further, a judgment of dismissal was entered. The cause was then appealed to the Court of Appeals of Kentucky. That court held that the demurrer should have been sustained, and the judgment in favor of the company was reversed. 77 S. W. Rep. 686. A petition for rehearing was denied for reasons stated in an opinion. 79 S. W. Rep. 290.

After the mandate of the Court of Appeals was filed in the Circuit Court that court, upon the pleadings and the mandate and opinion of the Court of Appeals, entered a judgment sustaining the demurrer, and, the defendant declining to plead further, the allegations of plaintiff's statement were taken for confessed, and it was adjudged that the property therein described was liable for taxation at the values stated in the judgment, and the defendant was adjudged to pay the taxes due upon such assessable values for the years in controversy, with the statutory penalty. In compliance with the request of the defendant the court separately stated its findings of fact and conclusions of law, which are as follows:

"Separation of Findings of Facts from Conclusions of Law.

"That the defendant was, at the time specified in the pleadings, the sole owner of the following-described property, named in the petition, to wit: Steamers Russel Lord, Pavonia, Inver-

ness and barges; that the same were of the value as follows, as set out in the statement: Russel Lord, $13,000; Pavonia, $10,000; Inverness, $2,500; barges, $10,000; that the defendant had enrolled said steamboats at Paducah, Kentucky, with the name Paducah painted on the stern of said vessels; that the defendant was a corporation legally incorporated under the laws of the State of Illinois.

"As a matter of law the court adjudges that the port of Paducah, Kentucky, was, at the times mentioned in the statement, the home port of said vessels and barges belonging to defendant and named in the statement, and that all of said vessels were liable to assessment and valuation, at the times stated in the statement, in McCracken County, Kentucky, for purposes of state, county and city taxes for the years, respectively, Russel Lord and Pavonia, 1899, 1900 and 1901; Inverness, 1901; barges, 1899, 1900 and 1901. The defendant excepts to each of the above findings of facts, and also to all of the conclusions of law."

A motion to set aside the judgment and for a new trial having been made and overruled, the cause was again appealed to the Court of Appeals of Kentucky. The court affirmed the judgment of the Circuit Court upon the authority of its previous opinion, and the case was then brought to this court.

*Mr. Charles E. Kremer*, with whom *Mr. James Campbell* was on the brief, for plaintiff in error:

The barges are engaged in interstate commerce but they are not enrolled and licensed, and have not "Paducah" painted on their sterns, and are not at Paducah when not in use or at any other time.

They have no actual situs in Kentucky, because not in the State, and no artificial situs by virtue of an enrollment and license, and therefore are not in Kentucky at all and cannot therefore be assessed there. Whether they have an actual situs elsewhere, or whether their situs is that of the domicil

of their owner, is entirely immaterial in this case. The case of the barges here comes within *Commonwealth* v. *American Dredge Co.*, 122 Pa. St. 386.

These barges were exempt from enrollment or license under § 21, Rev. Stat. The statement does not allege that they ever were in Kentucky. The answer alleges that they were engaged in interstate commerce between ports of different States. Being unenrolled, they can only be taxed at the residence of the owner in Chicago, where their owner had them assessed and paid taxes on them.

The gist of the decision of the Court of Appeals and its conclusion is, that as Paducah is the home port of the steamers in question, therefore that place is their situs for assessment and taxation.

The court does not find that Paducah is the actual situs of these vessels, but holds that Paducah is the home port of them because it is the place where they are enrolled and licensed, and because Paducah is painted on their sterns. This, their artificial situs, the court holds, is sufficient to subject the vessels to assessment and taxation there, regardless of the place of their ownership.

If it should appear that these vessels were illegally enrolled and licensed at Paducah, and illegally had their names painted on the stern, then they had no legal situs at Paducah and it would follow that plaintiff in error could only be assessed at Chicago, or at the place of the actual situs of the vessels, and therefore it was right in paying taxes upon these vessels at Chicago, the place of its domicil.

The steamers were subject to enrollment under the laws of the United States, and section 4141 of the Revised Statutes applies to them.

Under this statute plaintiff in error could only register or enroll its steamers at a port nearest to that in which it resided. The steamers should have been enrolled at Chicago, where it resided, that being a port and at the same time the place of residence of the corporation. These vessels could

only be enrolled in compliance with sections 4313 and 4314.

These steamers should have been enrolled and licensed in Chicago, and if, at the expiration of their licenses, they were found away from Chicago, should have been enrolled and licensed under section 4328. The vessels were illegally and improperly enrolled at Paducah, and having been so illegally and improperly enrolled there, it follows that painting the name "Paducah" on their sterns was also illegal and improper.

The question of ownership and place of enrollment are, under the law, separate and distinct from the matter of the painting of the name on the stern. Before the passage of the act of 1884, the name to be painted on the stern was provided for by section 4334. The act of 1884 broadened the meaning of the word "port" under §§ 4178, 4334 as to painting the name on the stern.

The steamers were not temporarily enrolled at Paducah under § 4323 and were illegally enrolled there by one who had no right to do so.

This case is governed by *Morgan* v. *Parham,* 16 Wall. 471. See also *St. Louis* v. *Wiggins Ferry Company,* 11 Wall. 423; *Mayor* v. *Baldwin,* 57 Alabama, 61; *Yost* v. *Lake Erie Transp. Co.,* 112 Fed. Rep. 746; *The Lotus,* 26 Fed. Rep. 637.

The place of residence of the owners is to be considered the home port, even when the registration is in another State. *The Jenny B. Gilkey,* 19 Fed. Rep. 127; *The Charlotte Vanderbilt,* 19 Fed. Rep. 219; *The Plymouth Rock,* 14 Blatch. 505; *The Mary Chilton,* 4 Fed. Rep. 487; *The E. A. Barnard,* 2 Fed. Rep. 712; *The Golden Gate,* Newb. Ad. 308; *The Martha Washington,* 1 Cliff. 463; *The Thos. Fletcher,* 24 Fed. Rep. 375; *The Chelmsford,* 34 Fed. Rep. 399; *The Marion G. Harriss,* 81 Fed. Rep. 964; *The Richard G. Garrett,* 44 Fed. Rep. 379; *The Havana,* 64 Fed. Rep. 496.

The plaintiff is not estopped from claiming an invalid enrollment against the State of Kentucky because the State is in no way a party to such enrollment. This is a proceeding

entirely between the Government of the United States and the Ayer and Lord Tie Co., which does not inure to the benefit of the State. The latter is a mere outsider, in no way interested in the matter of enrollment, was not benefited by it, and cannot be injured by its being held illegal.

The steamboats had no actual situs. They were engaged in interstate commerce. They were engaged in trading between places in different States upon different waters. The State must show a situs of the property in question. *Walker* v. *Walker*, 9 Wall. 755; *Marine Nat. Bank* v. *Fiske*, 71 N. Y. 353; *Myers* v. *Cronk*, 113 N. Y. 608; *Monson* v. *Tripp*, 81 Maine, 24.

*Mr. N. B. Hays*, Attorney General of Kentucky, with whom *Mr. Charles H. Morris* and *Mr. J. H. Ralston* were on the briefs, for defendant in error:

If the actual situs and home port of the boats in question is Paducah, Kentucky, under the laws of the United States governing navigation, then these boats and barges are within the jurisdiction of the State of Kentucky, and the county of McCracken; are protected by the State's laws, and subject to state and county taxation; and if the tax is levied only at the home port, and said boats and barges are valued as other property, and without unfavorable discrimination, because of their employment, it is a valid power of the State. The situs of said boats for the purposes of taxation, is Paducah, Kentucky; and being a part of the property of this State, and said county, they are subject to taxation there, and not elsewhere. *Hays* v. *Pacific Mail Steamship Co.*, 17 How. 596; *Transportation Co.* v. *Wheeling*, 99 U. S. 273; *St. Louis* v. *Ferry Co.*, 11 Wall. 423; *Pullman Pal. Car. Co.* v. *Pennsylvania*, 114 U. S. 36; *Moran* v. *New Orleans*, 112 U. S. 75; *Morgan* v. *Parham*, 16 Wall. 471; Judson on Taxation, § 186.

While, for purposes of taxation, the general rule is that *mobilia sequuntur personam*, such is by no means the invariable rule, and in many cases tangible personal property acquires a

situs for taxation foreign to the residence of its owner. This was recently decided by this court in *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194. See also *Brown* v. *Houston,* 114 U. S. 622; *Union Refrig. Transit Co.* v. *Lynch,* 177 U. S. 149; *Delaware, Lackawanna & Western Ry. Co.* v. *Pennsylvania,* 198 U. S. 341.

Although assessed and taxed in Illinois, the same property is not exempt from taxation in Kentucky. *Coe* v. *Errol,* 116 U. S. 517.

The taxation of the vessels in Kentucky is not an interference with interstate commerce. Their home port being in McCracken County, Kentucky, and the city of Paducah, and being constantly employed and used in the streams of Kentucky, and those adjacent thereto, and when not in use kept at Paducah, they are property within the jurisdiction of said city, county and State, for the purpose of taxation, and the right of the State to tax them should not be denied. *Pullman Palace Car Co.* v. *Pennsylvania,* 141 U. S. 36; *American Refrigerator Trans. Co.* v. *Hall,* 171 U. S. 68; *Old Dominion Steamship Co.* v. *Virginia,* 198 U. S. 302; *Northwestern Lumber Co.* v. *Chehalis County,* 87 Am. St. Rep. 747; *National Dredging Co.* v. *State,* 99 Alabama, 462; *Norfolk and Western R. R. Co.* v. *Board of Pub. Works,* 97 Virginia, 23; *Minburn* v. *Hays,* 56 Am. Dec. 366; *Union Trust Co.* v. *Kentucky,* 199 U. S. 194.

No State can lay any tonnage tax, or lay any tax on interstate commerce itself, but the principle has always been recognized that the instruments by which interstate commerce was carried on were subject to state taxation as property wherever they might be situated, provided only that they were not discriminated against because of their occupation. *Louisville Ferry Co.* v. *Commonwealth,* 22 Ky. L. Rep. 446; *C. C. C. & St. L. Ry. Co.* v. *Backus,* 154 U. S. 439; *Henderson Bridge Co.* v. *Commonwealth,* 17 Ky. L. Rep. 389; *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 150; *Morgan* v. *Parham,* 16 Wall. 471.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

As in the argument counsel for plaintiff in error has not discussed the alleged error in overruling the motion to remove, we treat that question as waived and pass to the merits.

Notwithstanding, by the demurrer to the answer, it was conceded that the tie company was the owner of the alleged taxable property, that it was an Illinois corporation and that its main office was in Chicago, that it had paid taxes in Illinois upon such property, that the property was employed in interstate commerce between ports of different States, including the State of Illinois, that its steamboats were enrolled at Paducah, Kentucky, for convenience, Kentucky being the place of residence of one of its managing officers, and that its boats touched at Paducah only temporarily, never receiving or discharging cargo at that port, the Court of Appeals of Kentucky held that the property in question was subject to the taxing power of the State of Kentucky. The existence of power in the State to tax the property in question was rested solely upon the proposition that as the steamboats were enrolled at Paducah, and the name Paducah was painted upon their sterns, it was to be conclusively presumed that the home port of the vessels was at Paducah, and that such home port was the situs of the property for taxation. The barges were brought within the principle announced, because they were treated as mere accessories of the steamboats. While in the opinion the steamboats were regarded as operated under a registry, the fact is they were engaged in the coastwise trade under an enrollment and license. But this is immaterial, since vessels in order to be enrolled must possess the qualifications and fulfill the requirements necessary for registration.

To comprehend the question a chronological statement of the legislation of Congress as to the registration or enrollment of vessels, etc., is necessary.

By section 3 of an act approved December 31, 1792, 1 Stat. 287, 288, it was provided as follows:

"Sec. 3. *And be it further enacted*, That every ship or vessel, hereafter to be registered (except as hereinafter provided), shall be registered by the collector of the district in which shall be comprehended the port to which such ship or vessel shall belong, at the time of her registry, which port shall be deemed to be that, at or nearest to which, the owner, if there be but one, or if more than one, the husband or acting and managing owner of such ship or vessel, usually resides. And the name of the said ship or vessel, and of the port to which she shall so belong, shall be painted on her stern, on a black ground, in white letters, of not less than three inches in length. And if any ship or vessel of the United States, shall be found, without having her name, and the name of the port, to which she belongs, painted in the manner aforesaid, the owner or owners shall forfeit fifty dollars; one-half to the person giving the information thereof; the other half to the use of the United States."

On June 23, 1874, 18 Stat. 252, the foregoing provision was amended so as to allow the name of the vessel to be painted upon her stern in yellow or gold letters. In the Revised Statutes the requirement in question was separated into two sections (sections 4141, 4178), reading as follows:

"Sec. 4141. Every vessel, except as is hereinafter provided, shall be registered by the collector of that collection district which includes the port to which such vessel shall belong at the time of her registry; which port shall be deemed to be that at or nearest to which the owner, if there be but one, or, if more than one, the husband or acting and managing owner of such vessel, usually resides."

"Sec. 4178. The name of every registered vessel, and of the port to which she shall belong, shall be painted on her stern, on a black ground, in white letters of not less than three inches in length. If any vessel of the United States shall be

found without having her name and the name of the port to which she belongs so painted, the owner or owners shall be liable to a penalty of fifty dollars; recoverable one-half to the person giving the information thereof; the other half to the use of the United States."

By section 2 of the act of February 18, 1793, 1 Stat. 305, "for enrolling and licensing ships or vessels to be employed in the coasting trade," etc., the same requirements were made essential for enrollment as for registering, and by section 11 licensed vessels were specifically obliged to have the name and port painted on the stern. As incorporated into the Revised Statutes the latter provision reads as follows:

"SEC. 4334. Every licensed vessel shall have her name and the port to which she belongs, painted on her stern, in the manner prescribed for registered vessels; and if any licensed vessel be found without such painting, the owner thereof shall be liable to a penalty of twenty dollars."

By section 21 of an act approved June 26, 1884, 23 Stat. 53, 58, it was provided as follows:

"SEC. 21. That the word 'port,' as used in sections forty-one hundred and seventy-eight and forty-three hundred and thirty-four of the Revised Statutes, in reference to painting the name and port of every registered or licensed vessel on the stern of such vessel, shall be construed to mean either the port where the vessel is registered or enrolled, or the place in the same district where the vessel was built or where one or more of the owners reside."

Again, by acts approved February 21, 1891, c. 250, sec. 1, 26 Stat. 765, and January 20, 1897, c. 67, sec. 1, 29 Stat. 491, section 4178, Rev. Stat., was amended so that it now reads as follows:

"SEC. 4178. The name of every documented vessel of the United States shall be marked upon each bow and upon the stern, and the home port shall also be marked upon the stern. These names shall be painted or gilded, or consist of cut or carved or cast roman letters in light color on a dark ground,

or in a dark color on a light ground, secured in place, and to be distinctly visible. The smallest letters used shall not be less in size than four inches. If any such vessel shall be found without these names being so marked the owner or owners shall be liable to a penalty of ten dollars for each name omitted: *Provided, however,* That the names on each bow may be marked within the year eighteen hundred and ninety-seven."

Was the ruling below justified by these statutes? We think not.

The general rule has long been settled as to vessels plying between the ports of different States, engaged in the coastwise trade, that the domicil of the owner is the situs of a vessel for the purpose of taxation, wholly irrespective of the place of enrollment, subject, however, to the exception that where a vessel engaged in interstate commerce has acquired an actual situs in a State other than the place of the domicil of the owner, it may there be taxed because within the jurisdiction of the taxing authority.

In *Hays* v. *Pacific Mail S. S. Co.,* 17 How. 596, vessels were registered in New York, where the owner resided. The vessels were employed in commerce on the Pacific Ocean between San Francisco and Panama, and the question was whether the vessels were subject to taxation in California. It was decided that they were not, as they had not become incorporated into the property of California so as to have an actual situs in that State, and it was declared that the vessels were properly taxable at the domicil of their owner.

In *St. Louis* v. *Ferry Co.,* 11 Wall. 423, the boats of the company, an Illinois corporation, were enrolled at St. Louis and plied between that city and the city of East St. Louis, in the State of Illinois. The company had an office in St. Louis, where its president and other principal officers lived and where the ordinary business meetings of the directors were held and the corporate seal was kept. A tax was paid upon the boats in Illinois, the residence of the owner. The city of St. Louis

taxed the ferry boats as personal property "within the city."
It was, however, held that the boats did not so abide within
the city as to become incorporated with and form part of its
personal property, citing *Hays* v. *Pacific Mail S. S. Co.*, 17
How: 559. In the course of the opinion the court said (italics
mine):

"The boats were enrolled at the city of St. Louis, but that
throws no light upon the subject of our inquiry. The act of
1789, sec. 2, 1 Stat. at L. 55, and the act of 1792, sec. 3, 1
Stat. at L. 287, require every vessel to be registered in the
district to which she belongs, and the fourth section of the
former act and the third section of the latter, declares that
her home port shall be that at or near which her owner resides.
*The solution of the question, where her home port is, when it
arises, depends wholly upon the locality of her owner's residence,
and not upon the place of her enrollment.* 3 Kent. Com.
133, 170; *Hill* v. *The Golden Gate*, Newberry, 308; *The
Superior*, Newberry, 181; *Jordan* v. *Young*, 37 Maine, 27,
29."

In *Morgan* v. *Parham*, 16 Wall. 471, a vessel originally
registered in New York had been engaged for years in the
coastwise trade between Mobile and New Orleans and was
enrolled at Mobile. It was decided that the boat could not
be taxed in Alabama.

In *Transportation Co.* v. *Wheeling*, 99 U. S. 273, vessels
engaged in commerce between ports of different States were
held taxable at the domicil of the owner.

Quite recently, in *Old Dominion S. S. Co.* v. *Virginia*, 198
U. S. 299, the foregoing authorities were approvingly cited,
and were in effect reaffirmed. In that case the vessels were
enrolled in New York, the domicil of the owner, but, although
engaged in interstate commerce, the vessels were navigated
wholly within the limits of the State of Virigina, it was held
that they came within the exception to the general rule which
we have previously stated, and were properly taxable in
Virginia.

As in the case at bar, the owner of the vessels was domiciled in Illinois and the vessels were not employed exclusively in commerce between points in the State of Kentucky, but were engaged in traffic between that State and the ports of other States, including Illinois, it seems obvious that, as a question of fact they had no permanent situs in the State of Kentucky within the rule announced in the *Old Dominion Steamship* case. The right then of the State of Kentucky to tax the vessels must solely depend upon the fact that they were enrolled at the port of Paducah in that State. . But, if enrollment at that place was within the statutes, it is wholly immaterial, since the previous decisions to which we have referred decisively. establish that enrollment is irrelevant to the question of taxation, because the power of taxation of vessels depends either upon the actual domicil of the owner or the permanent situs of the property within the taxing jurisdiction. The court below, however, did not apparently decline to apply the previous decisions of this court, but treated them as inapposite, under the assumption that they were rendered before the act of 1884, and that the necessary effect of that statute was to change the general law so as to cause vessels to be subject to taxation within a State where they were enrolled, although that State was neither the residence of the owner nor the place of the actual situs of the property. As the ruling below was made before the decision of this court in the *Old Dominion Steamship Company* case, rendered since the act of 1884, we might well leave the demonstration of the error into which the court fell to result from the decision of that case, since the ruling below is wholly inconsistent with that decision. This clearly follows, since in the *Old Dominion Steamship* case the right of the State of Virginia to tax was based upon the permanent situs of the vessels in Virginia, although they were enrolled in another State. But in view of the general importance of the subject we shall briefly point out the mistaken construction given by the court below to the act of 1884.

After referring to the act of 1884, and quoting the provisions

of the Rev. Stat. sec. 4178, as now existing, the court below said:

"Appellee had a right to cause its boats to be registered at Paducah, although that was not the place nearest to the port where it resided; and it fully complied with the law regulating the subject, by painting the words 'of Paducah, Ky.,' on the stern thereof; and by the amendment of 1884, Paducah became the home port of the vessels so registered and marked."

\*    \*    \*    \*    \*.    \*    \*    \*

"The steamboats involved in this litigation are separated from the residence of their owner by a long distance in both geography and time; in fact, they can never visit the port at which their owner resides; they are, so far as their actual situs is concerned, permanently confined to the rivers over which they float; if their home port had to be Chicago, because that is the residence of their owner, as under the law prior to 1884, then they would have a home port from which they could derive no advantage or protection, because they could never reach it. It was to obviate this hardship, with others, that the act of 1884 was passed by Congress, permitting their owners to select for them a home port in the field of their operations, which is for them a home port in fact, as well as in law and name. Property, such as that under consideration, ought, logically, to be taxed at its own home port; there it can be seen and properly valued for assessment by the fiscal officers; whereas, at the residence of its owner (Chicago), the officers, of necessity, must rely on the statements of the latter for both its existence and its value. At its home port it enjoys the protection of the laws of the jurisdiction in which it is located, and both justice and reason would seem to require that property thus permanently located, both in legal contemplation and in fact, within a jurisdiction foreign to that of its owner, should contribute its fair share to the support of that government whose protection it enjoys."

It is at once apparent that this line of reasoning, whilst it

asserts the principle of actual situs and expounds the act of 1884 as making that the exclusive rule to test the power to tax, at once causes the act to destroy the very principle which it was assumed the act upheld. This is the inevitable consequence of the conclusion reached by the court below, that the act of 1884 endowed the owner of a vessel with the power, simply by the painting a name of a place upon his vessel, to make such place the situs for taxation, although it might be neither the actual situs of the property nor the residence of the owner.

The act in question was an elaborate one, containing thirty sections, relating to the American merchant marine, and was entitled "An act to remove certain burdens on the American merchant marine and encourage the American foreign carrying trade and for other purposes." 23 Stat. 53. The only provision contained in that act which had any reference to the subject under consideration and which was relied upon in the court below was section 21, which we have previously quoted, and which we again copy:

"SEC. 21. That the word 'port,' as used in sections forty-one hundred and seventy-eight and forty-three hundred and thirty-four of the Revised Statutes, in reference to painting the name and port of every registered or licensed vessel on the stern of such vessel, shall be construed to mean either the port where the vessel is registered or enrolled, or the place in the same district where the vessel was built or where one or more of the owners reside."

Clearly this section does not essentially change the prior general law respecting enrollment, as it simply enlarges the power of an owner in regard to painting on the stern of his vessel the name of the place from which he may desire to hail her. The prior provisions as to enrollment clearly exacted that the owner, as an incident to enrollment, should mark upon his vessel the name of the place of enrollment; in other words, compelled the owner to hail his vessel from the place of enrollment, although he might be domiciled elsewhere. Now,

as the settled rule at the time of the passage of this act was
that enrollment, and consequent marking of the stern of. the
vessel with the name of the place of enrollment, was not the
criterion by which to determine the power of taxation, it is
impossible to conceive that Congress intended, by merely
conferring a privilege to select the name of a place other than
the port of enrollment to be marked upon a vessel, to over-
throw the settled rules in regard to taxation of such property
which existed at the time of the passage of the act of 1884. To
give to the statute the construction adopted by the court below
would be simply to hold that its purpose was to endow the
owner with the faculty of arbitrarily selecting a place for the
taxation of his vessel in defiance of the law of domicil and in
disregard of the principle of actual situs, since by the statute
the owner was given the right to paint either the name of the
place where the vessel was built, where enrolled, or where one
of the owners resided. And this demonstrates the miscon-
ception of the construction given to the act of 1884 by the
court below, since the court declared that the whole effect of
the act was to endow the owner of vessels with the power to
select, by marking on the stern, a place "in the field of opera-
tions," which should be the place of taxation. But no such
limitation as the field of operations can be implied from the
language of the statute, and, therefore, if the construction
adopted were upheld the unlimited right of the owner to
arbitrarily frustrate the taxing laws of the State where he was
rightfully subject to taxation would result.

Undoubtedly, as we have said, the general statutes as to
enrollment in force prior to 1884 required that the name of
the port to be painted upon the vessel should be the port of
enrollment, although such place might not be the domicil. of
the owner. In practice, however, that rule was not always
observed, because the owners of vessels desired to hail them
from the place of the residence of the owner. *The Albany,* 4
Dill. 439. And the history of the adoption of the provision
now known as section 21 of the act of 1884 referred to leaves

no room for doubt that Congress simply intended to legalize such practice. The provision had its origin in an amendment unanimously reported by the Committee on Commerce of the Senate on May 1, 1884, to a bill then pending in the Senate. The chairman of the committee, in reporting the proposed amendment, said (15 Cong. Rec. p. 3650):

"Mr. FRYE. The next amendment I am authorized to offer is a section in reference to the painting of the name of the ship on the stern. Not very important that must appear to Senators. Many of our shipowners in the State of Maine think more of that than they do of the rest of this bill. The man who owns a ship looks upon her as his wife or his children; he loves his ship; and under the law as it stands to-day he is required to paint on the stern the name, it may be that of his wife or of his daughter and the port to which she belongs. For seventy-five years the port to which she belonged was construed to be the place where she was owned, and if a man built a ship in Surry, and she was owned there, he painted on the stern the 'May Ann, from Surry, Me.' In 1875 a sharp Treasury official discovered that it was a violation of the law. He reported to the Secretary of the Treasury, and the Secretary issued an order that all those ships must bear the name of the port of entry, regardless of where they were built or owned. They are building vessels, home vessels, owned at home, owned in families, in many instances by the blacksmith, the carpenter, the captain, and the mate. Their vessels they wish to name after one of the family and the home, the place where she is owned and built, and yet under the construction of the Treasury Department she may be the 'Julia Ann,' from Machias, her port of entry, but actually built and owned a hundred miles from there. Take Bath and Richmond, on the Kennebec River—Bath, the greatest shipbuilding city in the United States to-day of wooden ships; her rival, Richmond, is fifteen miles above. The men who build their ships in Richmond regard it as about as serious a wrong as can be imposed upon them by law to compel them

to put a ship built there and owned there under the name of Bath, her port of entry, and Bath would fully reciprocate under like circumstances. I take it that no Senator will object to that provision.

"Mr. HALE. Just there let me ask my colleague, was not the reason for the ruling of the Secretary of the Treasury that the technical view was taken of the word 'port,' and it was concluded there could be nothing but the port of entry, thereby taking away this privilege from the men who built the ship?

"Mr. FRYE. I so understand it."

And, without debate, the amendment was adopted, and subsequently, with other amendments, was incorporated as part of the bill which came from the House of Representatives, relating to the same general subject as the bill which was under consideration in the Senate. 15 Cong. Rec. pp. 3869, 3973, 5440.

The suggestion that because the vessels were enrolled at Paducah the owner was estopped from disputing that they had a situs for taxation there, is but to contend that the place of enrollment was *per se* controlling, in disregard of the repeated rulings of this court to the contrary.

*The judgment of the Court of Appeals of Kentucky must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.*