## Taxation of Steamship Companies.

*Taxation — Corporations — Capital stock tax — Bonus — Steamship companies—Vessels—Home port—Situs—Acts of May 8, 1901, P. L. 150, and July 22, 1913, P. L. 903.*

1. Steamship companies incorporated under the laws of another state with their principal office therein are not liable for the Pennsylvania capital stock tax on that portion of their capital represented by steamships and other vessels owned by such companies and registered at a port in Pennsylvania as their home port, if said vessels have not acquired an actual *situs* in Pennsylvania.

2. Nor are such companies liable for bonus upon an increase in the capital stock as represented by an investment in such vessels.

Department of Justice. Opinion to Hon. J. Lord Rigby, Revenue Deputy, Auditor General's Department.

MOYER, Dep. Att'y-Gen., Nov. 23, 1927.—You have forwarded to this office the Capital Stock and Bonus Reports of the Cape Steamship Company and the Pure Oil Steamship Company for the year 1925, together with the petitions of these companies for resettlements of the capital stock tax and bonus settlements made against said companies for said year, with affidavits of the officers of said company, setting forth in detail the voyages of the various steamships and vessels of said companies during the year in question. Your inquiry is whether these companies, both of which are incorporated under the laws of Delaware, with their home offices in said state, and qualified to do business in Pennsylvania, are liable for the Pennsylvania capital stock tax on that portion of the value of the capital stock represented by steamships and other vessels owned by said companies and registered at a port in this State, but which steamships and vessels had not acquired an actual *situs* in Pennsylvania; and, further, whether said steamship companies are liable for bonus upon an increase in the capital of said companies as represented by their investment in said steamships and other vessels?

Let us consider first the case of the Cape Steamship Company. The Cape Steamship Company is a corporation incorporated under the laws of the State of Delaware, with its principal or home office at Dover, Delaware, and chartered for the purpose of owning, leasing and operating ships and other vessels for carrying oil, merchandise and freight of any kind "to and from any ports and in all parts of the world." According to the affidavits filed by officers of this company, it owned three oil tank ships. Two of these oil tank ships did not touch a port in Pennsylvania during said tax year, and the other vessel only touched a port in Pennsylvania seven times during the year while actually engaged in discharging interstate commerce.

The Pennsylvania capital stock tax is provided for by various acts of assembly. The principal act under which the capital stock tax here in question was imposed is the Act of July 22, 1913, P. L. 903. The bonus settlement in this case was made under the provisions of the Act of May 8, 1901, P. L. 150. We deem it 'unnecessary to further refer to or discuss these various acts of assembly, inasmuch as their construction is not at issue here.

The general rule is that tangible personal property is subject to tax by the state in which it is, no matter where the domicile of the owner may be, and notwithstanding the fact that the property may be employed in interstate transportation: Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 35 L. Ed. 613. However, in the instant case, in light of the affidavits filed by the officers of the company, the oil tank ships and barges in question did not acquire an actual *situs* in Pennsylvania. The question which you have presented to this department arises because of the fact that said oil tank ships and barges are registered or enrolled at a port in Pennsylvania. The Supreme Court of this State, in the case of Com. v. American Dredging Co., 122 Pa. 386, held that the rule as to vessels engaged in foreign or interstate commerce is that their *situs* for the purpose of taxation is their home port of registry, or the residence of their owner if unregistered. I presume that it was because of this decision that the settlements which comprehended the value of the ships and barges referred to were made against the Cape Steamship Company. The rule laid down in said case of Com. v. American Dredging Co., *supra*, appears to have been based upon the decision of the United States Supreme Court in the case of Hays v. Pacific Mail S. S. Co., 17 Howard, 596. In this case, it so happened that the home port of the vessels in question was the same port at which they were registered, to wit, New York City. The corporation which owned the vessels was incorporated in the State of New York and had its principal office in New York City.

The case of Com. v. American Dredging Co., *supra*, was decided in 1888. That the rule therein referred to, to the effect that the *situs* for the purpose of taxation is the home port of registry of the vessel, is not the rule today, is conclusively shown by the decision of the United States Supreme Court in the case of Ayer & L. Tie Co. v. Kentucky, 202 U. S. 421, 50 L. Ed. 1086, decided in 1906. In this case, the boats in question were engaged in interstate commerce between the ports of Kentucky, Illinois, Mississippi, Tennessee and Arkansas. They were owned by an Illinois corporation which has its principal office at Chicago, where taxes had been paid under the laws of the state, both to the state and to the city. Brookfield, in the extreme southern part of the state and upon the Ohio River, was a port of call, and an office was probably maintained there, it being a place where cargoes were often discharged. The general manager of the transportation department of the company resided in Kentucky, and the boats of the fleet were enrolled at Paducah, in that state, and bore upon their sterns the name "Paducah," as the home port or port of hail under the statute. Paducah was the place where the boats received their supplies and repairs, where seamen were hired and [boats] laid up when not in use, though it seems that Paducah was not a point where cargo was either received or discharged. Upon this state of facts it was held that the boats of the company had neither such artificial *situs* through enrollment or the marking upon their sterns, nor such actual *situs* by reason of the temporary stoppage at Paducah and other ports of the state, as to draw to it jurisdiction for purposes of taxation. In this case, Justice White, in his opinion on page 1087 (50 L. Ed.), states the general rule as follows: "The general rule has long been settled as to vessels plying between the ports of

different states, engaged in the coastwise trade, that the domicile of the owner is the *situs* of a vessel for the purpose of taxation, wholly *irrespective of the place of enrollment*, subject, however, to the exception that where a vessel engaged in interstate commerce has acquired an actual *situs* in a state other than the place of the domicile of the owner, it may there be taxed because within the jurisdiction of the taxing authority."

In this case the Federal statutes pertaining to registry or enrollment of a vessel in an American port were fully referred to. In view of this general rule, it will serve no purpose to discuss them here.

In support of the general rule laid down by the case of Ayer & L. Tie Co. *v.* Kentucky, *supra,* we also wish to cite the case of Southern Pacific Co. *v.* Kentucky, 222 U. S. 63, 56 L. Ed. 96, where the Supreme Court of the United States fully discussed all the important cases on the subject.

In the case of Old Dominion S. S. Co. *v.* Virginia, 198 U. S. 299, 49 L. Ed. 1059, the domicile of the owner of the vessels there in question as a taxing *situs* was held to have been lost and a new taxing *situs* acquired by reason of a permanent location within another jurisdiction. The Supreme Court of the United States said, in the case of Southern Pacific Co. *v.* Kentucky, *supra,* with respect to this case (56 L. Ed. 156) : "But in that case the judgment was rested upon the fact that the vessels had *for years been continuously and exclusively engaged in the navigation of the Virginia waters,* which state had thereby acquired jurisdiction for imposing a tax as upon property which had become incorporated into the tangible property within her territory."

In the instant case, although the Cape Steamship Company owns three oil tank ships which are enrolled at the Port of Philadelphia, for the purpose of protection on the high seas, nevertheless, under the facts shown in the affidavits filed by the company, these ships have acquired no actual *situs* in this State. As previously referred to, two of the ships did not touch a port in Pennsylvania during said tax year, and the other vessel only touched a port in Pennsylvania on seven different occasions. These occasions were when the ship in question was engaged in lawful commerce between the states. This ship was here only temporarily, depending at the time upon the amount of business transacted at the particular port incident to its interstate commerce. The situation here is entirely different from that found in the case of Old Dominion S. S. Co. *v.* Virginia, just referred to.

You are, therefore, advised that the Cape Steamship Company, a foreign corporation qualified to do business in Pennsylvania, is not liable for the Pennsylvania capital stock tax, during the year 1925 in question, on that portion of the value of the capital stock represented by oil tank ships owned by it, although registered at a port in this State, because these ships had not acquired an actual *situs* in Pennsylvania; and you are further advised that, for the same reason, this corporation is not liable for bonus upon the increase in the capital of said company as represented by its investment in said oil tank ships during the same year.

As to the Pure Oil Steamship Company, the facts are quite similar to the Cape Steamship Company. The Pure Oil Steamship Company is the owner of three oil tank ships and three barges used for transporting oil. According to the affidavit filed by the company, three of the oil tank ships and two of the barges are registered at a port in Pennsylvania, the remaining barge is registered at a port in Texas. A detailed statement of the voyages of the three ships and two barges shows that they visited Pennsylvania ports on numerous occasions, but only when engaged entirely in the business of interstate commerce, and that they were here only temporarily for the purpose of this

Taxation of Steamship Companies.

commerce. They did not acquire an actual *situs* in this State. The barge which was registered at a port in Texas did not touch a Pennsylvania port during the tax year in question.

You are accordingly advised that for exactly the same reason as in the case of the Cape Steamship Company, just discussed, the Pure Oil Steamship Company, a foreign corporation qualified to do business in Pennsylvania, is not liable for the Pennsylvania capital stock tax during the year 1925 in question on that portion of the value of the capital stock represented by oil tank ships and barges owned by it; and, likewise, it is not liable for bonus upon the increase in the capital of said corporation as represented by its investment in said oil tank ships and barges during said year.

I am herewith returning to you all reports, affidavits and papers pertaining to these cases which were submitted with your request for an opinion in order that you may effect the necessary resettlements of the accounts of these corporations for capital stock taxes and bonus.

From C. P. Addams, Harrisburg, Pa.