Leon D. La_zer, J.
The owner moves to vacate a lien filed against the barge Ira pursuant to section 80 of article 4 of the Lien Law, for work, labor, services and materials furnished. The motion is predicated on the theory that the Federal Ship Mortgage Act (IT. S. Code, tit. 46, § 971 et seq.), hereinafter cabled the “ Act ”, supersedes the Mew York State Lien Law and therefore the lien is void. The motion is opposed on the ground that the Act applies only to maritime liens. It is asserted that the instant lien is not maritime because the barge was not a “vessel” at the time of the improvements; that these were furnished during the refurbishing of the Ira as a restaurant and cocktail lounge; and that the hull had been withdrawn from navigation prior to the improvements. Although the facts are in issue, it appears that lienor did convert the Ira into a floating restaurant and cocktail lounge.
Section 971 of the Act provides: 1 ‘ Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel ”.
If the Ira is the proper subject of a maritime lien, and if the claimed services give rise to a maritime lien, the Act “ supersede [s] the provisions of all State statutes conferring liens on vessels, insofar as such statutes purport to create rights of action to be enforced by suits in rem in admiralty against vessel, which may be enforced by suit in rem, and it shall not railway, and other necessaries.” (§ 975).
Section 80 of the Lien Law, by its terms, applies only to debts which are not liens by maritime law.
Movant may succeed solely if it demonstrates that the Ira was a “ vessel ” under the Act when the materials and services were furnished, and that if any lien was warranted by the improvements, it was a maritime lien.
*682 “ The word ‘ vessel ’ includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water ” (TJ. S., Code, tit. 1, § 3). The character of the watercraft at the time the improvements are furnished is determinative of the issue (see Arques Shipyards v. The S. S. Charles Van Damme, 175 F. Supp. 871 [N. D. Cal., 1959]) but the intentions of the owner as to the use of the craft are not (The Showboat, 47 F. 2d 286 [Mass., 1930]). Where a craft is annexed to land by means of a permanent gangway and utility connections at the time the services are rendered to it, it is not a “ vessel ” (Hayford v. Doussony, 32 F. 2d 605 [5 Cir., 1929], same results reached on rehearing 42 F. 2d 439), but if it is capable of use in water transportation (§3) and is merely moored by lines it is a “vessel” within the meaning of the Act (The Arh, 17 F. 2d 446 [;S. D. Fla., 1926]). The fact that a craft “ has no motive power and must, as would the most lowly of dumb barges, be towed does not deprive her of the status of a vessel.” (Miami Riv. Boat Yard v. Sixty-Foot Houseboat Serial No. SC-40-2860-3-62, 390 F. 2d 596, 597 [5 Cir., 1968].)
Although lienor asserts that at the time of refurbishing the hull was not seaworthy and that the Ira had been withdrawn from navigation, the facts indicate that she was then afloat, having been towed several miles to her mooring point. She thus was capable of use as a means of water transportation. The fact that she was still .registered with the United States Coast Guard'hnd the Department of Transportation is some evidence that the barge had not been withdrawn from navigation (see Murray v. The Meteor, 78 F. Supp. 637 [E. D. N. Y., 1948], revd. on other grounds sub nom. Murray v. Schwartz, 175 F. 2d 72 [2d Cir., 1949]). The court therefore concludes that the Ira was a “ vessel ” within the meaning of the Act at the time the lienor furnished the materials and services alleged.
The purpose of a maritime lien is to facilitate the extension of credit to a vessel for the purchase of supplies, materials or services necessary to her continued operation (see Piedmont & George’s Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1; Norton v. The Evan N., 109 F. Supp. 505 [R. I., 1952]). The lien is not maritime solely because the services and materials are furnished to a vessel (see Piedmont & George’s Creek Coal Co. v. Seaboard Fisheries Co., supra); they must be supplied for aiding the vessel’s use in navigation or maritime commerce (see Arques Shipyards v. The S. S. Charles Van Damme, 175 F. Supp. 871, supra, and The Westmoor, 27 F. 2d 886 [Ore., 1928]). Improvements to outfit a vessel for a nonmaritime use do not *683 give rise to a lien under the Act (see J. C. Penney-Gwinn Corp. v. McArdle 27 F. 2d 324 [5 Cir., 1928], cert. den. sub nom. Lancaster Iron Works v. J. C. Penny-Gwinn Corp., 278 U. S. 632). In The W. T. Blunt (291 F. 899, 901 [E. D. Mich., 1923]) the court held that “ if a contract pertains to maritime service or a maritime transaction, that is, if it has a direct or substantial connection or relation to navigation, it is maritime in nature and may afford a sufficient basis for the jurisdiction of a court of admiralty. On the other hand, if such a contract is not related to navigation, even though it refers to a vessel, for example, if it does not tend to enable or aid a vessel to engage in navigation or otherwise pertain to navigation, it cannot be properly termed a maritime contract nor be enforced in a court of admiralty. North Pacific Steamship Co. v. Hall Brothers Marine Railway & Shipbuilding Co., 249 U. S. 119 ”.
It has been held that repairs to a floating dredge engaged in producing sand and gravel for shore use do not give rise to a maritime lien (Johnson & Towers Baltimore v. The Dredge, 241 F. Supp. 598 [Md., 1965]), but towage of a dredge is a maritime operation when the dredge is engaged in transportation of coal to barges at the time it is towed (Henderson Bros. v. The Tipple Boat No. 2, 97 F. Supp. 507 [N. D. W. Va., 1951]). The fact that the Ira might have been towed to and from the place where it was intended to be used as a dining and drinking establishment is not enough to bring it within the admiralty jurisdiction (Huyford v. Doussony, 32 F. 2d 605, supra).
Although the Ira had not lost her character as a vessel at the time the materials and services were furnished, she was not engaged in a maritime operation, and the improvements were calculated to fit her for a wholly nonmaritime use. Accordingly, movant has not demonstrated that the lien is a maritime one within the meaning of the Act. Therefore article 4 of the Lien Law is not superseded.
The motion is denied.