STATE of Missouri, ex rel. Ronald A.
LEGGETT, Collector of Revenue of
the City of St. Louis, Appellant,

v.

SOVRAN LEASING CORP., a/k/a
Nationsbanc Leasing Corp.,
Respondent.

No. 77842.

Supreme Court of Missouri,
En Banc.

Nov. 21, 1995.

Michael D. Stokes, St. Louis, Christine A.
Gilsinan, St. Louis, for appellant.

Norah J. Ryan, Robert H. Epstein, St.
Louis, for respondent.

PRICE, Judge.

This case concerns whether barges, owned
by a nonresident corporation and utilizing a
Missouri port less than two percent of the
time, are subject to Missouri ad valorem
personal property tax. We hold that the
barges are not subject to assessment and
collection of taxes pursuant to § 154.010,
RSMo 1994, because they are "other boats
and vessels used in navigating the waters of
this state" and they are not owned by residents of the City of St. Louis.

I.

Appellant, the Collector of Revenue for the
City of St. Louis, brought this action to
recover delinquent property taxes against respondent, NationsBanc Leasing Corporation
("NationsBanc"), formerly Sovran Leasing
Corporation, a North Carolina corporation
with its principal place of business in Atlanta,
Georgia. NationsBanc owns nineteen inland
river barges, which it leases to Riverway
Company ("Riverway"). Riverway is a
Minnesota corporation with its principal
place of business in Bloomington, Minnesota.
Neither NationsBanc nor Riverway have any
offices or agents in Missouri. The barges
continuously travel up and down the Mississippi, Illinois, and Ohio rivers transporting
grain products. They are not motorized and
must be pushed or pulled by tugboats. Less
than two percent of the loadings and unloadings of the barges in 1992 and 1993 were

made in the City of St. Louis. The barges were not in St. Louis City on January 1, 1992 or January 1, 1993.

The trial court found that § 154.010, RSMo 1994,[1] governs the taxation of these barges. However, because § 154.010 only provides for assessment in the county where the owner resides, the court further found that the property tax could not be assessed against these particular barges because neither NationsBanc nor Riverway reside in Missouri. The trial court alternately found the barges had no taxable situs in Missouri. We have jurisdiction pursuant to *Mo. Const. art. V, § 3.*

## II.

### A.

Missouri generally imposes an ad valorem tax upon all personal property with a Missouri tax situs pursuant to § 137.075 and § 137.095. Section 154.010, however, treats certain maritime property differently. It provides that:

1. Steamboats and other boats and vessels used in navigating the waters of this state, and all shares, stocks and interest therein, are hereby declared a special class of property for the assessment and collection of taxes.

2. All taxes on such property shall be assessed and collected in the county or city in which the owner or owners of said property may reside at the time of assessment.

While the statute explicitly provides that "[s]teamboats and other boats and vessels used in navigating the waters of this state" are a "special class of property for the assessment and collection of taxes", and that such property shall be assessed and collected "in the county or city in which the owner or owners of said property may reside", it makes no provision for the assessment or collection of taxes from nonresident owners. The plain implication is that "steamboats and other boats and vessels used in navigating the waters of this state" owned by nonresidents are not funneled to § 137.075 and § 137.095 as are those owned by residents.

Appellant argues against this result in two ways. First, appellant argues that the barges are not "other boats and vessels" and the statute is inapplicable to them. Alternatively, appellant argues that even if the barges are "other boats and vessels", § 154.010 is merely silent as to them, no implication against taxation exists in the statute, and they are simply to be taxed under § 137.075. We reject both of these arguments.

### B.

Chapter 154 provides no special definitions for the words "steamboats and other boats and vessels used in navigating the waters of this state." Two conclusions, however, are quickly apparent. First, these barges are not steamboats. They are neither propelled by nor utilize steam in any way. Second, these barges are actually "used in navigating the waters of this state." Thus, our focus turns to whether the barges are "vessels" or "other boats."

The term "vessel" is defined as "[a] ship, brig, sloop, or other craft used in navigation." *Black's Law Dictionary* 1733 (4th ed. 1968). A "vessel" also is defined as "a watercraft or structure with its equipment whether self-propelled or not that is used or capable of being used as a means of transportation in navigation or commerce on water and that usu[ally] excludes small rowboats and sailboats." *Webster's Third New International Dictionary* 2547 (1981). Barges have been considered vessels in caselaw for over a hundred years. *Disbrow v. The Walsh Brothers,* 36 F. 607, 608 (S.D.N.Y.1888); *The Wilmington,* 48 F. 566, 567 (D.Md.1880).

Federal statutes defining "vessels" are also interpreted to include barges. Under the title regulating shipping within the United States, a "barge" is defined as "a non-self-propelled vessel." *46 U.S.C. § 2101(2) (1988).* A "vessel" is defined as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." *46 U.S.C. § 2101(45) (1988) (incorporating by reference 1 U.S.C. § 3).* The United States

---

1. All citations are to Revised Statutes of Missouri (1994) unless otherwise indicated.

Supreme Court has interpreted this definition to include a barge, "even when it has not motive power of its own, since it is a means of transportation on water." *Norton v. Warner Co.,* 321 U.S. 565, 571, 64 S.Ct. 747, 751, 88 L.Ed. 931, 937 (1944), *overruled on other grounds by McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991).

Vessels have been defined in at least twenty-two other places in the United States Code, all in a manner that would include a barge. *See DiGiovanni v. Traylor Bros., Inc.,* 959 F.2d 1119, 1129 (1st Cir.1992) (Appendix). Active barges have been considered "vessels" for purposes of the Longshore and Harbor Workers' Compensation Act, *Tonnesen v. Yonkers Contracting Co.,* 847 F.Supp. 12, 16 (E.D.N.Y.1994); *Orgeron v. Avondale Shipyards, Inc.,* 561 So.2d 38, 43 (La.1990), *cert. denied,* 498 U.S. 818, 111 S.Ct. 62, 112 L.Ed.2d 36 (1990), the Jones Act, *Ducote v. Keeler & Co., Inc.,* 953 F.2d 1000, 1002 (5th Cir.1992), the Federal Ship Mortgage Act, *Application of Ba Bas Barge, Inc.,* 73 Misc.2d 680, 343 N.Y.S.2d 3, 6 (1973), and other maritime actions, *Penton v. Pompano Const. Co., Inc.,* 976 F.2d 636, 641 (11th Cir.1992) (maritime tort); *Amoco Oil v. M/V Montclair,* 766 F.2d 473, 476 (11th Cir.1985), *cert. denied,* 475 U.S. 1121, 106 S.Ct. 1639, 90 L.Ed.2d 185 (1986) (in rem liability).[2]

"Boat" is defined in *Black's Law Dictionary* 220 (4th ed. 1968), as "[a] small open vessel, or watercraft, usually moved by oars or rowing." Similarly, "boat" is defined in *Webster's Third New International Dictionary* 244 (1981), as "a small vessel with or without a deck propelled by oars or paddle or by sail or power."

In contrast to a "vessel", which generally refers to a larger, commercial watercraft, "boat" generally connotes a smaller, noncommercial watercraft, most often open. However, this is an overly technical reading of the term, in the context of § 154.010. The statute refers not merely to "boats" but to "other boats", particularly in comparison to steamboats. Because a steamboat would not normally be associated with small, noncommercial watercraft, this implies a broader interpretation for the term "other boats" as used in the statute. Notably, in 1884 this Court did not even question whether a barge was a boat for purposes of assessment of a wharfage fee provided by city ordinance, noting merely that "[t]his ordinance conforms to the law for taxation of boats and vessels." *The City of St. Louis v. The St. Louis & New Orleans Transp. Co.,* 84 Mo. 156, 159 (1884). The tax law referred to was a precursor to chapter 154.

Appellant attempts to avoid the plain and ordinary meaning of the terms "other boats and vessels" by arguing that the definition provided in § 306.010 for the terms "motorboat" and "vessel" should apply. The pertinent portions of § 306.010 read as follows:

> As used in this chapter the following terms are construed to have the following meanings, except in those instances where the context clearly indicates otherwise:
>
> (1) "Motorboat", any vessel propelled by machinery, whether or not such machinery is a principal source of propulsion.
>
> \*    \*    \*    \*    \*    \*
>
> (7) "Vessel", every motorboat and every description of motorized watercraft, and any watercraft more than twelve feet in length which is powered by sail alone or by a combination of sail and machinery, used or capable of being used as a means of transportation on water, but not any watercraft having as the only means of propulsion a paddle or oars.

Within this context, appellant argues that these barges would not fit within the definition of "motorboat" or "vessel" for purposes of § 306.010. Appellant's argument fails for a number of reasons.

First, § 306.010 does not define the term "other boats." Even if its definitions of motorboat[3] and vessel were applicable to the

---

2. Cases defining "vessels" focus on whether the primary purpose of the structure is navigation and distinguish structures that are "withdrawn from navigation" or permanently moored. *Pavone v. Mississippi Riverboat Amusement Corp.,* 52 F.3d 560, 570 (5th Cir.1995); *DiGiovanni, supra* at 1123.

3. The definition of the term "motorboat" is simply not applicable here and we need not analyze

barges here, the barges nonetheless could be included under the "other boats" classification.

Second, the very language of § 306.010 specifies that the definitions therein are "[a]s used in this chapter." This is particularly noteworthy considering that § 154.010 preceded § 306.010. The legislature might have specifically provided that these definitions apply to other already existing statutes, or at least have avoided this type of limiting language, had it been its intention to do so.

Third, § 154.010 was enacted in 1879 and has not been revised. 1879 *Mo.Laws* 195. The definitions contained in § 306.010 were first adopted in 1959, and the definition of "vessel" has been revised several times since.[4] Significantly, a barge would have been a "vessel" under the original definition. The amendment to the statute requiring vessels to be "motorized" was not passed until 1975.

■ In light of these factors, we cannot conclude that the present, technical definition of "vessel" utilized in § 306.010 was intended to supplant the otherwise plain and ordinary meaning of the terms "steamboats and other boats and vessels" as used in § 154.010. "While many arguments can be made that [a statute] should be construed with reference to other sections of the revenue statutes, and while many rules of statutory construction can be cited, the cardinal rule of statutory construction is to consider the words in their plain and ordinary meaning." *State ex rel. May Dept. Stores Co. v. Koupal,* 835 S.W.2d 318, 320 (1992); *§ 1.090.* We hold that commercial barges are both "other boats" and "vessels" for the purposes of § 154.010.1 and are therefore a special class of property for the assessment and collection of property taxes.

its relation to the term "steamboat" used in § 154.010.

4. The original definition of "vessel" included "every description of watercraft, other than a seaplane on the water, used or capable of being used as a means of transportation on water." 1959 *Mo.Laws,* S.B. No. 142, § 1. It was not until 1975 that the statute was amended in a manner that excludes barges, by limiting vessels to "every motorboat and every description of motorized watercraft, other than a seaplane on

## III.

Appellant's second argument is more complex. It focuses upon the relationship between subsections 1 and 2. Basically, appellant argues that because subsection 2 only provides for assessment of taxes against resident owners of "other boats and vessels", subsection 1 should be read only to apply to other boats and vessels owned by residents.

■ Appellant's argument fails because it does not give meaning to the unique language of § 154.010 and because appellant literally reads the statute backwards. Subsection 1 plainly and clearly provides that other boats and vessels are "declared a special class of property for the assessment and collection of taxes." This declaration is universal and not limited by whether the owner is a resident or a nonresident. Subsection 2 then provides that "such property shall be assessed and collected in the county or city in which the owner or owners of said property may reside." Subsection 2 does not provide that nonresident owners are exempt from the statute or that their maritime property is not included within the special class of property created in subsection 1. The plain and ordinary reading of the statute can only mean that if all such maritime property is treated as a special class of property for purposes of taxation, the tax only "shall be assessed and collected" against resident owners.

Admittedly it now seems odd that the legislature would chose to assess taxes pursuant to § 154.010 upon resident owners while allowing nonresident owners to go tax free. The historical context within which this statute was enacted, however, provides the explanation for this anomaly. In 1879, when § 154.010 was passed, it was not believed that a state could impose an ad valorem tax

the water and any watercraft more than twelve feet in length which is powered by sail alone or by a combination of sail and machinery, used or capable of being used as a means of transportation on water, but not any watercraft having as the only means of propulsion a paddle or oars." 1975–76 *Mo.Laws* 316. The current definition, amended to its present condition in 1989, eliminated the seaplane reference. 1989 *Mo.Laws* 772.

upon nonresident owners of maritime property.

Under the "home port" doctrine, then followed, the resident state of the owner, considered the true home port, had almost exclusive authority to assess property taxes against a vessel.[5] *Hays v. Pacific Mail S.S. Co.*, 58 U.S. (17 How.) 596, 15 L.Ed. 254 (1854); *St. Louis v. The Ferry Co.*, 78 U.S. (11 Wall.) 423, 20 L.Ed. 192 (1870); *Ayer & Lord Tie Co. v. Kentucky*, 202 U.S. 409, 26 S.Ct. 679, 50 L.Ed. 1082 (1906). Because vessels were considered so mobile, they could not establish a taxable situs elsewhere. *Hellerstein, State Taxation*, § 4.10[2] (1993); *Situs of Aircraft, Rolling Stock, and Vessels for Purposes of Property Taxation*, 3 A.L.R.4th 837, 854–55 (1981). Even if the vessels rarely, if ever, visited the home port state, a nondomiciliary state could not tax them. *Southern Pacific Co. v. Kentucky*, 222 U.S. 63, 77, 32 S.Ct. 13, 18, 56 L.Ed. 96 (1911); *Morgan v. Parham*, 83 U.S. (16 Wall.) 471, 478, 21 L.Ed. 303 (1872).

The home port rule was based on the ancient *mobilia sequuntur personam* doctrine, which only allowed the owner's domiciliary state to tax tangible personal property. 71 Am.Jur.2d *State and Local Taxation* § 655 (1973). This doctrine still lingered in Missouri at the time the statute was passed.[6] Therefore, when the 1879 legislature passed the act that was codified as § 154.010, it was taxing all "steamboats other boats and vessels" to the greatest extent it believed possible at the time.

Although the "home port" doctrine was impliedly overruled by *Ott v. Mississippi Valley Barge Line Co.*, 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1949),[7] *Hellerstein, supra*, § 154.010 has not been amended since it was enacted in 1879. Thus, while the legislature might now impose a properly apportioned tax upon such transitory interstate maritime property, it simply has not done so.[8]

Judgment affirmed.

HOLSTEIN, C.J., BENTON, LIMBAUGH, ROBERTSON and COVINGTON, JJ., and JAMES M. SMART, Jr., Special Judge, concur.

WHITE, J., not participating because not a member of the Court when case was submitted.

---

5. The only exception to this doctrine was the rare case where a vessel was exclusively employed in a different state. *Old Dominion S.S. Co. v. Virginia*, 198 U.S. 299, 25 S.Ct. 686, 49 L.Ed. 1059 (1905).

6. For instance, in 1879 all corporate personal property was taxed to the county of the owner's residence, even if the property was situated in a different county. *§ 6692, 6662, RSMo.1879*. Today, the statute reflects the evolution of tax situs law and allows the county where personal property is situated to tax, regardless of where the owner resides. *§ 137.095*.

7. In *Ott*, the Supreme Court permitted a nondomiciliary state to assess apportioned property taxes on barges within the state's waters. *Ott*, 336 U.S. at 175, 69 S.Ct. at 435. Now domiciliary states are prohibited from taxing the full value of inland water vessels that operate continuously outside the state. *Standard Oil v. Peck*, 342 U.S. 382, 72 S.Ct. 309, 96 L.Ed. 427 (1952).

8. It might be argued that §§ 137.075 and 137.095 repeal by implication the failure of § 154.010 to assess tax against nonresident owners for property situated in Missouri on January 1 of any given year. It might also be argued that § 154.010 creates an implied exemption prohibited by Article X, § 6 of the Missouri Constitution. We do not reach either of these issues because they were not raised by appellant and because the barges were not situated in Missouri. *See Buchanan v. State Tax Comm'n.*, 407 S.W.2d 910, 914 (Mo. banc 1966). Neither were the barges located in Missouri on January 1 of 1992 or 1993. The facts of this case do not present this issue, and we reserve any such ruling. In light of our interpretation of § 154.010, we also do not address respondents constitutional arguments. *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 227 (Mo. banc 1982); *State ex rel. Schwebe v. Campbell*, 878 S.W.2d 827, 829 (Mo. App.E.D.1993).