ROBERTS, Justice.
This cause is before the court on consolidated appeals to review a judgment of the Circuit Court of Leon County validating State Building Revenue Bonds, Series L, in the principal amount of $10,000,000.00, proposed to be issued by the State Board *10 of Administration and the Florida Development Commission to finance the construction of the so-called Capitol Center Project pursuant to the legislative directive of Chapter 65-262 and Chapter 65-385, Acts of 1965 (§§ 272.121-272.127, Fla.Stat. 1967, F.S.A.) and Senate Concurrent Resolution 438 adopted by the 1967 Legislature. Specifically, such project contemplates the acquisition of land and the construction of new legislative quarters in the Capitol and the reconstruction and improvement of the center section of the Capitol. The bonds are payable solely from rentals accruing under a Lease-Purchase Agreement between the Florida Development Commission and the Board of Commissioners of State Institutions.
The validation of the bonds was contested by the State Attorney for the Second Judicial Circuit of Florida and by two private citizens-taxpayers, appellants here. Their principal objection in the trial court, and here, has to do with the validity of the proposed Revenue Bonds under Section 6 of Article IX of the Florida Constitution, F.S.A. which prohibits the issuance of bonds by the State except to repel invasion or suppress insurrection. The appellants concede that revenue bonds or certificates of one kind or another, payable from a variety of sources — including special taxes — have been many times upheld by this court as against an attack under Section 6 of Article IX, supra. They contend, however, that in no case has it been held that the “general appropriations” of the State of Florida can be used, directly or indirectly, to pay off such a revenue bond or certificate without violating Section 6 of Article IX; and they urge this court to “decide this question head-on and to determine what the effect of Section 6, Article 9 is under today’s pressures of modern day government.”
There can be no doubt that the Building Revenue Bonds sub judice will be serviced from state funds currently available in each year, in the general revenue fund, for current governmental expenses. Such a use of state tax funds by state agencies has long since been expressly authorized by the Legislature, Sec. 288.17, Fla.Stat., F.S.A. (enacted in 1955 as Ch. 29831, Laws of Florida, Acts of 1955); and a total of some $48,000,000.00 of Revenue Bonds have been validated, issued and buildings constructed for use of state agencies — in Leon County and in other counties throughout the state — under the financing plan authorized by Section 288.17, supra. (In fact, one of such buildings, the Holland Building in Tallahassee, is presently being used by the Legislature pending the construction of new quarters to meet its greatly expanded needs, and the Building Revenue Bonds for its construction are being serviced by “rentals” appropriated for such purpose from the General Revenue Fund.) Soon after the enactment of Sec. 288.17, supra, two of such proposed Building Revenue Bond issues were brought to this court for review on appeal from the judgment of validation and were approved as against an attack under Section 6 of Article IX. See State v. Florida Development Commission (Fla.1956), 84 So.2d 707 (the Citrus Commission Building in Lakeland), and State v. Florida Development Commission (Fla.1956), 86 So.2d 155 (the State Department of Public Welfare Building in Pensacola). The other bond issues referred to above were validated, after due publication of notice, but the validating judgments were not appealed; and at this late date the attack made by the appellants seems dilatory, to say the least. We have, however, reconsidered the question in the light of the contentions here made and have concluded that the Revenue Bond Issue sub judice is not susceptible to attack under Section 6 of Article IX.
The reason for the adoption, in 1930, of Section 6 of Article IX has been many times stated by this court and need not be repeated. It suffices to, say that in a decision of this court soon after its adoption, Tapers v. Pichard (1936), 124 Fla. 549, 169 So. 39, it was held that a county could issue “certificates of payment” payable from the Jail Building Fund as and when *11 funds were collected therein from the special building tax authorized by statute for such purpose, without first submitting such certificates to the freeholders for approval, as required by Section 6 of Article IX for the issuance of “bonds” by counties or cities. This court said:
“Contracts let in contemplation of this act are limited to county necessities under strict budgetary regulations. The county could wait until the tax collecting period (not exceeding five years) expired and the taxes collected and then proceed to construct the courthouse or jail, but in lieu of this, if it becomes necessary to commence construction earlier and pay for it from the funds as they are collected, no law is violated.”
Subsequent decisions confirm that a city or county may anticipate future tax receipts, without an approving vote of the freeholders, in order to supply an essential governmental requirement. See Posey v. Wakulla County (1941), 148 Fla. 115, 3 So.2d 799 (courthouse); State v. City of Winter Park (1948), 160 Fla. 330, 34 So.2d 740 (sewer system); Seaboard Air Line R. Co. v. Peters (Fla.1949), 43 So.2d 448 (Miami International Airport); State v. Lafayette County (Fla.1952), 55 So.2d 799 (county jail); State v. County of Palm Beach (Fla.1956), 89 So.2d 607 (county office building); State v. County of Dade (Fla.1957), 92 So.2d 186 (jail and criminal courts building); State v. County of Santa Rosa (Fla.1958), 105 So.2d 365 (additions to courthouse and jail); State v. Lee County (Fla.1960), 121 So.2d 788 (additions to courthouse).
As shown by the above cited decisions, and others relating to state revenue bonds, the use of tax funds or appropriated revenues to provide an essential government requirement is not repugnant to the Constitution, so long as there is no general obligation or mandatory pledge of the taxing power of the state, city or county. And we think that the housing of the Legislature during its sessions, and providing a depository for its records, is just as basic and indispensable to the exercise of its functions by this branch of our government as is the providing of a county jail or a courthouse or office building in the exercise by a county of its governmental functions. It is inescapable that funds currently available in the state’s General Revenue Fund could be—and would have to be—appropriated each year to provide rental quarters for the greatly expanded housing needs of our Legislature, as is presently being done, until new quarters could be constructed. As in Tapers v. Pichard, supra, 169 So. 39, it would be possible to accumulate funds for a number of years and then proceed to construct the quarters indispensably necessary to the Legislature in carrying out its function; but “in lieu of this, if it becomes necessary to commence construction earlier and pay for it from the funds as they are collected, no law is violated.” Tapers v. Pichard, supra, 169 So. at p. 41.
The Building Revenue Bonds sub judice expressly provide that no holder of the bonds shall have any right to compel or require any appropriation by the Legislature of this State of the payment of the rentals from which they are serviced, and each Bond disclaims any obligation of the State or any County for its payment.
We hold, therefore, that the Building Revenue Bonds are not within the inhibition of Section 6 of Article IX but may validly and constitutionally be issued to provide a basic and indispensable governmental requirement, namely, housing and related facilities for our State Legislature and necessary reconstruction of the seat of the Executive Branch of our government—the center section of the Capitol.
It is also contended on behalf of appellants that the Capitol Center Project proposed to be constructed with the proceeds of the bond issue is contrary to the legislative directions as to such project contained in Sec. 272.126 and Senate Concur *12 rent Resolution 438. This contention cannot be sustained.
It is well settled that the construction given a statute by the administrative agency charged with its enforcement and interpretation is entitled to great weight and the court generally will not depart therefrom except for the most cogent reasons and unless clearly erroneous. Miller v. Brewer Co. of Fla. (Fla.1960), 122 So.2d 565. See also Pirman v. Florida State Improvement Commission (Fla.1955), 78 So.2d 718. Here, the plans for the proposed Capitol Center Project were approved by the Capitol Center Planning Committee (a majority of whose members are legislators), the Planning and Architectural Advisory Council, the Board of Commissioners of State Institutions, the State Board of Administration, and the Florida Development Commission. The legal and fiscal sufficiency of the bond issue was also approved by the Bond Review Board, in addition to the three state administrative bodies referred to above. In these circumstances, and in the absence of a showing that their judgment as to the legislative intent and as to the fiscal feasibility and legal sufficiency of the bonds was clearly erroneous, the contentions of the appellants in this respect cannot be sustained.
The additional assignment of error by the appellant-Salfi, respecting his right to appear in a capacity other than as an individual, has been considered and no error has been found in the ruling of the trial judge in this respect.
We now reach the question of whether or not the “bond anticipation notes” are valid. The respondents claim authority for the notes under Section 215.431, Florida Statutes, F.S.A., the relevant portions of which read as follows:—
“Each of the counties, school boards, districts, authorities and municipalities in the state shall have power, at any time and from time to time after the issuance of bonds thereof shall have been authorized whether such bonds be general, special, revenue or other obligations * * * to borrow money for the purposes for which such bonds are to be issued in anticipation of the receipt of the proceeds of the sale of such bonds and within the authorized maximum amount of such bond issue. * * * Bond anticipation notes shall be issued for all moneys borrowed under the provisions of this law.” (Underscoring supplied.)
Apparently the Florida Development Commission relies upon the word, “authorities” recited in the Act. By the simple application of ejusdem generis, we must reason since the word, “authorities” was commingled with counties, school boards, districts and municipalities, that the word, “authorities” in the statute was intended to apply to authorities that are local in nature. Accordingly, it is our view and we hold that the Florida Development Commission is without authority under F.S. Section 215.431, F.S.A. to issue the notes, but this in no manner or wise invalidates the bonds herein validated and which are approved.
For the reasons stated, the judgment validating the Building Revenue Bonds should be and it is hereby
Affirmed.
THOMAS, Acting C. J., THORNAL and ERVIN, JJ., and SPECTOR, District Court Judge, concur.
ADAMS, J., dissents.