BOARDMAN, Judge.
Appellants/defendants, John W. Mikos, as property appraiser for Sarasota County, and Harry L. Coe, Jr., as executive director of the Department of Revenue of Florida, appeal the final judgment entered in favor of appellee/plaintiff Ringling Bros.-Barnum & Bailey Combined Shows, Inc. We focus on the question of whether certain tangible personal property owned by appellee is subject to taxation on a portion of its value based on the number of days it is in the state annually rather than taxation at 100% of its value.
Ringling is a Delaware corporation in the business of staging circus performances. During the tax years involved, 1972 through 1976, its principal place of business was Washington, D.C. It is authorized to do business in Florida as a foreign corporation. It has approximately 650 employees. Eighty-five employees, including all the executive officers, are based in Washington, D.C. where all administrative and executive functions are conducted. Eleven employees are based in Venice, Florida, where Ringling maintains permanent facilities.
*886 Two separate shows, designated as the Red Unit and the Blue Unit, are produced. Approximately 280 persons travel with each unit. Each unit has its own equipment and animals (the tour property) and is transported throughout the United States and Canada on railroad cars (the railroad property) which are owned by Ringling. Each unit is accompanied by an average of thirty-four railroad cars which are moved from location to location by interstate common carriers. The common carriers provide the engines, cabooses, and crews. The railroad cars are used not only for transportation but also to house a majority of the performers. The shows tour an average of thirty-five states in approximately eleven months. Ringling enters into leases with the arenas where the shows are performed well in advance of each season.
Each show consists of approximately forty to fifty specialty acts and five production numbers. Each year Ringling conceives and produces one new show concept for either the Red Unit or the Blue Unit which tours for two years before it is changed. In the tax years involved, the shows were generally created and planned during the month of March at the Washington, D.C. headquarters. New costumes, props,[1] and equipment are manufactured and assembled in New York City during a period beginning in June and ending in November or December and then shipped to Venice, Florida. The purpose of the stay in Venice is to assemble and rehearse the show and to perform maintenance on equipment and the railroad property. The new show spends about ten weeks in Venice and then leaves on its tour throughout the country. The show then returns to Venice for about a month to refurbish and to add new acts. Thus, each unit spends some time every year in Venice. Both units were present in Venice on January 1 of each of the tax years involved. All of the tour and railroad property arrives at and departs from Sarasota County on pre-established, definite dates in accordance with itineraries for each unit. Some of the property is eventually retired to the facilities in Venice.
In 1971 all of the personal property of Ringling, including the tour and railroad property which was physically located at its Venice quarters on January 1, the date for annual assessment established by statute, was assessed at 100% of its value. Ringling objected to this assessment before the Board of Tax Adjustment for Sarasota County. After a hearing, the Board approved an agreement by which the value of the property was apportioned on the basis of the number of days in the year that the property was in Florida. In its 1972 tangible property tax return Ringling listed the value of the tour and railroad property on an apportioned basis in accordance with the 1971 agreement. However, the appraiser assessed the tour and railroad property at its full value, and the Board of Tax Adjustment sustained the assessment over Ringling’s objection. In the tax years 1973 to 1976 the appraiser continued to assess the tour and railroad property at its full value. The assessments as to the tour property for 1973 through 1976 and for the railroad property for 1973 and 1974 were sustained by the Board. However, the 1975 and 1976 assessments of the railroad property were disapproved because the Department of Revenue had determined that the railroad property was “private car line” property within the meaning of Section 193.085(4), Florida Statutes.[2] The property has not been subjected to ad valorem taxation by any other state.
After exhausting its administrative remedies, Ringling filed suit seeking cancellation or reduction of the tangible personal property tax. The assessments in dispute were for the tax years 1972 through 1976 as to the tour property and 1972 through 1974 as to the railroad property. The final judgment recited, among other things, the following:
*887 2. That after an extensive review of the facts presented in this case, the Court finds that the Ringling tour and railroad property was not “permanently located” in Sarasota County, Florida, on the assessment date within the meaning of Florida taxing statutes applicable for each year involved in this consolidated case.
3. That Ringling tour property was subject to tangible personal property taxes by Sarasota County, Florida, but under the Constitution of the United States the tax must be an apportioned tax determined by multiplying the assessed value of the tour property by a fraction, the numerator of which is the number of days the tour property was physically present in Sarasota County during the year, and the denominator of which is the total number of days in the year, and it is so ordered.
4. That for the tax years 1972, 1973 and 1974, Plaintiff’s railroad property is subject to tangible personal property taxation by Sarasota County, Florida, but the tax is to be an apportioned tax determined in the manner set forth in paragraph 3 above, and it is so ordered.
The tax assessor contends that the property was taxable at 100% of its value. In response, Ringling argues that if the property was subject to any tax, the apportionment adopted by the court was appropriate. Ringling asserts however, by cross-appeal, that the property was the subject of no tax whatsoever.
Under Florida law the situs of tangible personal property for taxation purposes is determined in accordance with Section 192.032(2), Florida Statutes (1977), which provides that property shall be “permanently located” in the State of Florida on the assessment date of January l.[3] The effect of the term “permanently located” in that section is to statutorily incorporate the doctrine of permanence as it applies to establishment of an actual tax situs.[4] Because there are no Florida statutory guidelines applicable to the establishment of the tax situs, the rules established by case law relevant to the doctrine of permanence should be applied to each situation.
Generally, movable tangible personal property has a situs in the domicil of the owner regardless of its actual location in that state on the assessment date. Ayer & Lord Tie Co. v. Kentucky, 202 U.S. 409, 26 S.Ct. 679, 50 L.Ed. 1082 (1906); 71 Am. Jur.2d State and Local Taxation §§ 661-65 (1973). If on the date for assessment tangible personal property has acquired a situs in a nondomiciliary state, it is subject to a nondiscriminatory property tax in that state. Old Dominion S. S. Co. v. Virginia, 198 U.S. 299, 25 S.Ct. 686, 49 L.Ed. 1059 (1905). Tangible property which is physically present in a nondomiciliary jurisdiction for the sole purpose of transit through that state is not subject to property taxation there. Kelley v. Rhoads, 188 U.S. 1, 23 S.Ct. 259, 47 L.Ed. 359 (1902); State and Local Taxation, supra, §§ 658-63. Nonetheless, movable property may be subject to local taxation if there is a break in the transit and the property has come to rest within the taxing entity's jurisdiction. Minnesota v. Blasius, 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131 (1933). If the purpose of the interruption, however, is incidental to transportation it is not taxable. Champlain Realty Co. v. Town of Brattleboro, 260 U.S. 366, 43 S.Ct. 146, 67 L.Ed. 309 (1922). Intent to transport the property to another jurisdiction at some later date does not *888 exclude taxation by the state where it is more or less permanently located as of the date of assessment. Susquehanna Coal Co. v. City of South Amboy, 228 U.S. 665, 33 S.Ct. 712, 57 L.Ed. 1015 (1913).
In discussing the word permanent with respect to tax situs, the court in City of Dallas v. Overton, 363 S.W.2d 821, 825 (Tex.Ct.Civ.App.1963), said:
The term “permanent” as used in expressions relating to this rule of law is sometimes confusing. The term “permanent” is used in contra distinction of the term “temporary” or “transitory”. The question of “permanency” is clarified considerably in Cooley, “Law of Taxation” Fourth Ed., § 452, as follows:
“In order to acquire a situs in a state or taxing district so as to be taxable in the state or district regardless of the domicile of the owner and not taxable in another state or district at the domicile of the owner, tangible personal property must be more or less permanently located in the state or district. In other words, the situs of tangible personal property is where it is more or less permanently located rather than where it is in transit or temporarily and for no considerable length of time.

“The governing rule, as usually stated, is that the taxable situs depends on whether the property is ‘permanently’ within the state. However, in this connection, the word ‘permanently’ is apt to be misleading unless read in connection with the facts of the particular case. It means a more or less permanent location for the time being.”
See also 110 A.L.R. pp. 707, 717:
“The courts are all agreed that before tangible personal property may be taxed in a state other than its owner’s domicil, it must acquire there a location more or less permanent. It is difficult to define the idea of permanency that this rule connotes. It is clear that ‘permanency,’ as used in this connection, does not convey the idea of the characteristics of the permanency of real estate. It merely involves the concept of being associated with the general mass of property in the state, as contrasted with a transient status — viz., likelihood of being in one state today and in another tomorrow.”

Obviously the courts do not construe the term “permanent” to mean absolutely permanent, since movable property is seldom absolutely permanent. .
In Ray v. Board of County Comm’rs, 173 Kan. 859, 863, 252 P.2d 899, 902 (1953), the court upheld a tax on construction equipment which had been brought into the state for approximately sixty days by a nondomi-ciliary contractor in order to do some road work. The court observed:
As a general proposition, before tangible personal property may be taxed in a state other than the domicile of the owner it must have acquired a more or less permanent location in that state as contrasted to a transient status. Within the meaning of the’rule “permanency” has been held to mean a more or less permanent location, for the time being, one test being whether the property in question is within the state solely for use and profit there. .
The Supreme Court of Wisconsin reached a similar conclusion in another construction equipment case. Thus, in Town of Cady v. Alexander Construction Co., 12 Wis.2d 236, 243, 107 N.W.2d 267, 271 (1961), the court reasoned:
In the instant case the construction equipment was in the state of Wisconsin for somewhat less than a year and was not in transit or merely passing through . the state, but was being used by its owner for the construction of a highway. True, the owner intended to remove the property upon completion of the contract, but the intention of the owner is not the deciding factor in determining the taxable status of personal property. During the months that the property was in Wisconsin, it and its owner received the benefits of our laws, the same as similar property so owned and used by Wisconsin *889 residents. From the standpoint of the nonresident owner, it is true the property was in Wisconsin temporarily in a broad sense, but temporary is a relative term. The length of time the property was in Wisconsin depended upon the size of the construction job. The property was used for the purpose for which it was constructed and for the benefit of its owner’s business. The property, in our opinion, had sufficient contact with this state to acquire a taxable situs and to justify a personal-property tax thereon by the state.
Reversing the trial judge for having given the word “permanent” in Section 192.032 too narrow an application, our sister court, in Overstreet v. Sea Containers, Inc., 348 So.2d 628, 630 (Fla. 3d DCA 1977), said:
In City of Lakeland v. Lawson Music Co., Inc., 301 So.2d 506 (Fla. 2d DCA 1974), the court opined that for purposes of taxation, the word “permanent” in a taxing statute does not always denote lasting forever, and does not always have a meaning opposite to temporary.
“In tax cases the requirement of permanency has been found satisfied where presence is consistent with continuity and not sporadically or temporarily present.” Supra, 301 So.2d 508 at 508.
In addition, on the Federal level, the Court of Appeals for the District of Columbia has held that permanency, in the sense that personal property must be fixed like real property is not essential to the establishment of a taxable situs. District of Columbia v. Smoot Sand & Gravel Corp., 87 U.S.App.D.C. 248, 184 F.2d 987 (1950).
Though the facts were unique, the case is significant because the court construed the permanence required by the statute by drawing upon the general definition applicable to the acquisition of a tax situs in a nondomiciliary state.
Taxes on commodities or articles of trade have often been upheld so long as the items are not in the stream of interstate commerce. Thus, even though it is evident that commodities are intended to be shipped beyond the state boundary shortly after the assessment date, they have been held to be subject to taxation by a nondomiciliary state so long as the journey has not commenced. Diamond Match Co. v. Village of Ontonagon, 188 U.S. 82, 23 S.Ct. 266, 47 L.Ed. 394 (1903); Coe v. Town of Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715 (1886). Likewise, when the interstate transit has been interrupted for purposes other than those which are necessarily incident to the transportation, the commodities have not been deemed protected from taxation. Minnesota v. Blasius, supra; Bacon v. Illinois, 227 U.S. 504, 33 S.Ct. 299, 57 L.Ed. 615 (1913). In this type of ease the courts consistently seem to require much less in the way of a showing of permanence for purposes of the acquiring of a tax situs. See Clark, A State’s Tax Jurisdiction as Limited by the United States Constitution, 13 U.Fla. L.Rev. 401, 421 (1960).
Applying these principles to the undisputed facts of the case before us, we are persuaded that the subject property acquired a situs in Sarasota County, Florida, for the purpose of tangible personal property taxation. The property was not within the “stream of commerce” while it was located in Sarasota County, and the purpose of the annual stays in Venice were distinct from those incidental to transportation. While Ringling intended to transport the property out of the state each year, Ringling also intended to bring it back at the conclusion of each tour. The property enjoyed the protection of the state to such a degree that its owner should be required to contribute to the state’s maintenance.
Because we have held that the property was taxable by Sarasota County, the second issue we must address is whether it is taxable at its full value.
The majority of the many cases cited by the parties to this appeal deal with instrumentalities continually employed in interstate commerce, such as boats, trains, and airplanes. These cases hold that such items of property are subject to taxation by *890 a nondomiciliary state if there is sufficient activity within the state but then only upon an apportioned basis.[5] Braniff Airways v. Nebraska State Board, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967 (1954); Pullman’s Palace Car Co. v. Pennsylvania, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613 (1891). These are primarily cases involving fleets of vehicles in which no one vehicle is in the taxing state for an appreciable length of time, yet, as an entity, the fleet itself has a very substantial connection with the state. For example in Johnson Oil Refining Co. v. Oklahoma ex rel. Mitchell, 290 U.S. 158, 54 S.Ct. 152, 78 L.Ed. 238 (1933), the Court held that the average number of railroad cars, but not the whole fleet of cars owned by the taxpayer, which operated within the jurisdiction was taxable although no one car had an actual situs in that state. The rule of these cases is that any ad valorem tax on movable, tangible personal property which is in the stream of interstate commerce at the time the tax accrues must be apportioned so as to avoid an undue burden on interstate commerce.[6] See, e. g., Ott v. Mississippi Valley Barge Line Co., 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1949).
Although we recognize this well established rule of apportionment and appreciate the reasoning supporting it, there is no constitutional requirement that an apportionment formula be applied to movable property which has not entered or has left the stream of interstate commerce. Clearly, the commerce clause would not be involved. The due process clause does not require that in all circumstances there be quid pro quo between the tax paid and the benefits received. See Developments in the Law-Federal Limitations on State Taxation of Interstate Business, 75 Harv.L.Rev. 953 (1962). The statement by the United States Supreme Court that when a state has the power to levy a tax on property it must do so in “relation to opportunities, benefits, or protection conferred or afforded by the taxing State” is to remind the states that the property it seeks to tax must have a sufficient relationship to their jurisdictional boundaries.[7] Ott v. Mississippi Barge Line, supra, at 174, 69 S.Ct. at 434, 93 L.Ed. at 589. See Wisconsin v. J. C. Penney Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940).
The trial court was in error when it found that only an apportioned tax could be levied against the tour and railroad property. The property is to be treated like any other movable, tangible personal property in the state, and it is subject to taxation at 100% of its value.
REVERSED and REMANDED.
GRIMES, C. J., and RYDER, J., concur.

. Ringling leases its costumes and props.

. Because the issue of the propriety of taxing the railroad property as a “private car line” is not challenged, we do not consider it in this opinion.

. At the outset we note what appears to be an inconsistency between the finding that the property was not “permanently located” in Sarasota County and the fact that the property was held subject to tangible personal property taxes on an apportioned basis. Under the wording of the statute, if the property were not permanently located in Sarasota County, we cannot see how it could be held subject to a tax in any amount.

. When the legislature first used the words “permanently located” in 1970 with reference to tangible personal property, we do not think they intended to limit more strictly the capacity of the state to tax than the constitutional standard of due process which requires tangibles of a nonresident to have acquired a tax situs in the taxing state.

. Apparently, the trial judge relied on these cases when he determined that Sarasota County did have authority to tax on an apportioned basis. However, we do not view Ringling’s railroad property as an instrumentality in the same sense as the cars involved in the cases referred to above. Ringling simply used its railroad property to haul its own show from place to place, and for purposes of analysis, the railroad property’s tax status was no different from that of Ringling’s tour property.

. This analysis does no harm to the rule that the owner’s domiciliary state may tax personalty if no other tax situs for the property has been established. Property which is continually involved in interstate commerce while in a nondomiciliary state is subject only to a tax on the portion of its value representing the nexus between that state and the property. The domiciliary state, however, would be authorized to tax that property not only on the basis of the nexus between the property and its jurisdiction but also may tax any portion not taxed by another authority. Johnson Oil Refining Co. v. Oklahoma ex rel. Mitchell, 290 U.S. 157, 54 S.Ct. 152, 78 L.Ed. 238 (1933). Of course, if the property is permanently removed from the domiciliary, it may not tax that property at all. 71 Am.Jur.2d State and Local Taxation §§ 664-65 (1973).

. A taxing authority may choose to apportion its tax to reflect a direct relation between the tax paid and benefits enjoyed such as was done in Ice Capades v. Los Angeles, 56 Cal.App.3d 745, 128 Cal.Rptr. 717 (1976). This would avoid the burden of double taxation where an actual situs has been established in more than one jurisdiction. A state is not, however, obliged to avoid double taxation in this circumstance, even though such a result is favored when interpreting tax statutes. State and Local Taxation §§ 31-41, supra, n.6.