497 So.2d 630 (1986)
John W. MIKOS, Etc., Petitioner,
v.
RINGLING BROS.-BARNUM & BAILEY COMBINED SHOWS, INC., et al., Respondents.
No. 67766.
Supreme Court of Florida.
September 25, 1986.
Rehearing Denied December 11, 1986.
Beth E. Antrim-Berger of Culverhouse & Dent, Sarasota, for petitioner.
Granville H. Crabtree, Jr. and Michael M. Ingram of Crabtree, Sanchez, Parker & Ingram, P.A., Sarasota, for respondents.
*631 Jeff Kielbasa, Deputy Gen. Counsel, Tallahassee, for Dept. of Revenue, State of Fla., amicus curiae.
Robert A. Ginsburg, Dade Co. Atty., and Daniel A. Weiss, Asst. Co. Atty., Miami, for Franklin B. Bystom, as Property Appraiser of Dade County, Florida, amicus curiae.
PER CURIAM.
We have for review Mikos v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc., 475 So.2d 292 (Fla. 2d DCA 1985), which the Second District Court of Appeal has certified as being in direct conflict with Autotote Limited, Inc. v. Bystrom, 454 So.2d 661 (Fla. 3d DCA 1984), review denied, 461 So.2d 113 (Fla. 1985). This Court has jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution. The issue is whether Ringling's circus tour property is permanently located in Sarasota County for ad valorem tax purposes under subsections 192.032(2) and (5), Florida Statutes (1983). We find that the tangible personal property in question is not permanently located in Sarasota County, and we therefore approve the opinion of the district court.
Ringling is a Delaware corporation in the business of staging circus performances throughout the United States and Canada. Ringling consists of two traveling circuses, the red unit and the blue unit, both of which return to Ringling's permanent facilities in Venice, Florida, each year in order to prepare for the next year's performances and to maintain and refurbish the circuses' property. Both units remain in Venice, a municipality within Sarasota County, for a period of approximately two and one-half months each year, leaving the city sometime in January and returning in November. The controversy in this case centers around Ringling's tour property, including animals and equipment, as well as certain costumes and props which Ringling leases from Hagenbeck-Wallace, Inc.[1] At all times, both while traveling and while in Venice, Ringling's circuses have in their possession all the tour property at issue in this case.
Mikos, as property appraiser for Sarasota County, has assessed Ringling's tour property at 100 percent of its value for ad valorem tax purposes every year since 1972. Ringling and Hagenbeck-Wallace have challenged the assessments each year, claiming that the circus property is not permanently located in Sarasota County.
In 1979 the Second District Court of Appeal ruled that Ringling's property had in fact acquired situs in Sarasota County and that, therefore, the property could be assessed at 100 percent of its value for ad valorem tax purposes. Mikos v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc., 368 So.2d 884 (Fla. 2d DCA), cert. denied, 378 So.2d 348 (Fla. 1979), appeal dismissed, 445 U.S. 939, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980). In its 1979 Mikos the second district reasoned that because no statutory definition of permanence existed, the meaning of the term "permanently located" would have to be determined purely from case law. After an extensive discussion of national case law, the second district determined that the circus property was permanently located in Sarasota County for ad valorem tax purposes.
Shortly after the district court's decision, however, the legislature amended section 192.032, Florida Statutes (1979), which deals with ad valorem taxation. Subsection 192.032(5), Florida Statutes (1983), now provides that with respect to tangible personal property the term "permanently located" means "habitually located or typically present for the 12-month period preceding the date of assessment."[2] In the instant case, the district court relied upon this amendment in concluding that Ringling's tour property was not permanently located within Sarasota County for purposes *632 of taxation from 1980 through 1983. We agree.
Florida law provides that all real and personal property located within this state is subject to taxation unless expressly exempted. § 196.001, Fla. Stat. (1983). Mikos relies on this statutory provision as well as a historical overview of judicial decisions in the area of ad valorem taxation to support his claim of taxation. Indeed, were it not for the 1979 amendment to section 192.032, we might well agree. The language currently contained in subsection 192.032(5), however, is unambiguous and specifically defines the term "permanently located." Such a specific statutory definition is controlling and must be followed by the courts of this state. Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla. 1983); Citizens v. Public Service Commission, 425 So.2d 534 (Fla. 1982); Tropical Coach Line, Inc. v. Carter, 121 So.2d 779 (Fla. 1960). The courts are not taxing authorities and cannot rewrite the statute. Moreover, a taxing statute should always be construed in the light most favorable to the taxpayer. Harbor Ventures, Inc. v. Hutches, 366 So.2d 1173 (Fla. 1979); Bayonet Point Hospital v. Department of Labor & Employment Security, Division of Unemployment Compensation, 460 So.2d 473 (Fla. 2d DCA 1984). Thus, in the instant case, because the tour property is only present in Sarasota County for approximately ten weeks a year, the property cannot be said to be typically present over a twelve-month period preceding the date of assessment. Therefore, the tour property is not subject to taxation by Sarasota County.
Although Mikos points to Autotote Limited, Inc. v. Bystrom in support of the ad valorem tax on Ringling's tour property, we join the second district in rejecting the Autotote rationale. Autotote dealt with Dade County's attempt to levy an ad valorem tax on certain pari-mutuel wagering equipment present in that county. In that case the taxpayer contended that the 1979 statutory definition of "permanently located" imposed as a precondition to taxation a twelve-month presence in the county prior to the January 1 assessment date. In rejecting this argument the court relied on Department of Revenue rule 12D-1.03(1)(c), which states that an object is "normally and usually permanently located" where it is generally kept for use or storage or where it is consistently returned by its owner for use or storage. Fla. Admin. Code Rule 12D-1.03(1)(c)1. Autotote also concluded that the legislature only intended subsection (5) to apply to multicounty disputes and that, therefore, subsection (5) had no effect on Autotote's property because no such multicounty dispute was involved. In the words of the Autotote court:
To regard the legislative definition of "`permanently located'" as imposing an additional stricture on taxing tangible personal property located in Florida on January 1 would be incompatible with the patent intent of the Florida Legislature to render taxable under § 192.032(2) property brought into the state after January 1 and before April 1.
454 So.2d at 662-63.
In our view, the Autotote court erred in relying upon rule 12D-1.03(1)(c) as an aid in interpreting subsection 192.032(5). Rule 12D-1.03(1)(c) was adopted three years prior to the 1979 amendment. As the district court in the instant case pointed out, rule 12D-1.03(1)(c) was intended to aid in interpreting subsection 192.032(2), which deals with the taxation of property present in more than one Florida county during the taxable year. Because subsection (5) contains entirely different language and makes no reference to multicounty taxation disputes, we neither view the rule as relevant nor read that subsection as applicable solely to multicounty disputes. Therefore, we reject the rationale of Autotote.
We further agree with the second district that, although the second district's interpretation of subsection 192.032(5) appears to create an inconsistency with subsection 192.032(2), which authorizes the taxation of property brought into the state after January 1 and before April 1, subsection 192.032(5) *633 is the later enactment and therefore must prevail. Askew v. Schuster, 331 So.2d 297 (Fla. 1976). As noted by the district court, there is a strong presumption that, when the legislature amends a statute, it intends to alter the meaning of the statute. Seddon v. Harpster, 403 So.2d 409 (Fla. 1981); Arnold v. Shumpert, 217 So.2d 116 (Fla. 1968). Indeed, the plain language of the 1979 amendment to section 192.032 indicates that the legislature intended to restrict the meaning of "permanently located," thus altering the interpretation the courts had previously given to the term. We are bound to acknowledge this change.
Accordingly, we approve the opinion of the district court.
It is so ordered.
ADKINS, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
McDONALD, C.J., dissents with an opinion, in which BOYD, J., concurs.
McDONALD, Chief Justice, dissenting.
Because the majority's interpretation of the situs statute creates both unnecessary discord between portions of section 192.032, Florida Statutes (1983), and disparity between similarly situated taxpayers, I dissent. Florida law provides that all real and personal property located within the state is to be taxed unless expressly exempted from taxation. § 196.001, Fla. Stat. (1983). The permanency necessary to establish a tax situs for tangible personal property is not permanency in the sense that it must be fixed like real property. Instead, the property need only have a more or less permanent location, as distinguished from a transient or temporary one. 1961 Op. Att'y Gen. Fla. 061-195 (Dec. 19, 1961). Permanent does not mean always. City of Lakeland v. Lawson Music Co., 301 So.2d 506 (Fla. 2d DCA 1974). The majority's interpretation of section 192.032, however, requires such a fixed permanence and dangerously displaces a fundamental precept of tax law.
Subsection 192.032(2), Florida Statutes (1983), authorizes the ad valorem taxation of tangible personal property brought into the state between January 1 and April 1 of the taxable year. The majority's interpretation of the term "permanently located" as set forth in subsection 192.032(5) renders subsection 192.032(2) inoperative by requiring, as a condition precedent to taxation, twelve months of presence in the taxing jurisdiction prior to the date of assessment. Such a prerequisite has never before been imposed and surely was not the intent of the legislature when it amended section 192.032 in 1979.
I agree with the majority that when conflicting provisions exist within the same statute the most recent expression contained in the statute normally prevails. State v. City of Boca Raton, 172 So.2d 230 (Fla. 1965); Kiesel v. Graham, 388 So.2d 594 (Fla. 1st DCA 1980), review denied, 397 So.2d 778 (Fla. 1981). Nevertheless, the majority ignores another basic canon of statutory construction, which mandates that courts adopt a construction of a statutory provision which harmonizes and reconciles it with other provisions of the same act so long as there is any reasonable basis for consistency. Woodgate Development Corp. v. Hamilton Investment Trust, 351 So.2d 14 (Fla. 1977); State v. Putnam County Development Authority, 249 So.2d 6 (Fla. 1971). Accordingly, the majority opinion applies an erroneous construction to section 192.032(2) because both subsections 192.032(2) and 192.032(5) could have been given full effect under the interpretation applied in Autotote Limited, Inc. v. Bystrom, 454 So.2d 661 (Fla. 3d DCA 1984), review denied, 461 So.2d 113 (Fla. 1985). In Autotote the third district found that subsection 192.032(5) applied only to multicounty disputes and, therefore, had no effect with regard to Autotote's property. 454 So.2d at 662-63. Likewise, because no such intercounty situs dispute occurred in the case at bar, the definition of "permanently located" as set forth in subsection 192.032(5) should not have applied here either.
*634 The rationale for Autotote seems compelling. First, when read in context, it is apparent that the primary function of section 192.032 is to set out a systematic approach to settling intercounty situs disputes. Integrated Container Services, Inc. v. Overstreet, 375 So.2d 1146 (Fla. 3d DCA 1979). Subsection (5) defines the term "permanently located" as "habitually located or typically present for the 12-month period preceding the date of assessment." § 192.032(5), Fla. Stat. (1983). Subsection 192.032(2) utilizes this defined term when it sets out the applicable rules for determining which county shall have the right to levy an ad valorem tax on a given item of tangible personal property. Accordingly, Autotote's conclusion that subsection 192.032(2) is intended to function merely as a tool to resolve multicounty tax disputes and thus should have no application beyond that narrow fact situation appears correct.
Second, Autotote's reliance on Florida Administrative Code Rule 12D-1.03(1)(c)1 was justified. When construing a statute, a court should not disregard the administrative interpretation of that statute. Volusia Jai-Alai, Inc. v. McKay, 90 So.2d 334 (Fla. 1956). The Department of Revenue's rules interpreting tax statutes have considerable persuasive force before a court called upon to interpret such statutes. Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815 (Fla. 1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984); State ex rel. Biscayne Kennel Club v. Board of Business Regulation of Department of Business Regulation, 276 So.2d 823 (Fla. 1973); State v. Florida Development Commission, 211 So.2d 8 (Fla. 1968). Rule 12D-1.03(1)(c)1 states that an object is "normally and usually permanently located" where it is generally kept for use or storage or where an object is consistently returned by its owners for use or storage. Clearly, if subsection 192.032(5) is only applied to multicounty disputes, that provision can have no effect on rule 12D-1.03(1)(c)1, which was promulgated in order to aid in the interpretation of subsection 192.032(2). Fla. Admin. Code Rule 12D-1.03(1)(c). The fact that the rule was in existence prior to the 1979 amendment is irrelevant because, outside of the narrow arena of multicounty disputes, the taxing rules of section 192.032 were otherwise unaffected. Ringling acknowledges that its tour property is "consistently returned by its owners for use or storage" to Sarasota County and that the property was present in Sarasota County on January 1 of each year in question. Accordingly, under rule 12D-1.03(1)(c)1, the tour property is taxable.
Third, it is inconceivable that the 1979 amendment to section 192.032 was intended to narrow Florida's tax base by freeing from tax liability all tangible personal property not habitually present in one county for twelve full months prior to the assessment date. The majority, however, apparently has concluded that this tax base reduction was the goal of the amendment. I strongly disagree. The traditional justification for allowing local governments to impose ad valorem taxes on tangible personal property is that, because the locality provides the property or property owner with public services and the protection of the law, the locality is entitled to compensation for supplying those benefits. Curry v. McCanless, 307 U.S. 357, 364, 59 S.Ct. 900, 904, 83 L.Ed. 1339 (1939). As the United States Supreme Court stated in Union Refrigerator Transit Co. v. Kentucky, 199 U.S. 194, 26 S.Ct. 36, 50 L.Ed. 150 (1905):
The power of taxation, indispensible to the existence of every civilized government, is exercised upon the assumption of an equivalent rendered to the taxpayer in the protection of his person and property, in adding to the value of such property, or in the creation and maintenance of public conveniences in which he shares, such, for instance, as roads, bridges, sidewalks, pavements, and schools for the education of his children.
Id. at 202, 26 S.Ct. at 37. Clearly, Ringling uses at least as much in the way of costly public services as do the numerous seasonal businesses that operate in Sarasota for *635 only a few months out of each year and which are subject to taxation under section 192.032. Therefore, the majority's interpretation of section 192.032 treats similarly situated taxpayers differently. Moreover, imposing a condition precedent of habitual twelve-month presence in the taxing jurisdiction allows unscrupulous taxpayers to evade paying ad valorem taxes indefinitely simply by moving the property from county to county. Surely the legislature could not have intended such a result when it amended section 192.032. Nor has Ringling presented any persuasive evidence indicating that the legislature amended the statute in response to the second district's 1979 decision in Mikos v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc., 368 So.2d 884 (Fla. 2d DCA), cert. denied, 378 So.2d 348 (Fla. 1979), appeal dismissed, 445 U.S. 939, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980). Accordingly, I would quash the decision of the second district.
BOYD, J., concurs.
NOTES
[1] Both Ringling's tour property and Hagenbeck-Wallace's costumes and props shall be cumulatively referred to as "tour property" for purposes of this opinion.
[2] The 1979 amendment originally appeared as § 192.032(7), Fla. Stat. (1979), but has been renumbered as § 192.032(5).